UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER |

| | | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (IN CHAMBERS) - FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER TRIAL

## I. INTRODUCTION & BACKGROUND

This case concerns an action brought by an insurance company to recover the costs that it incurred in paying for the legal defense costs of its insureds in a separate underlying action.

On March 27, 2018, The Travelers Indemnity Company of Connecticut and Travelers Causality Insurance Company of America (collectively, "Plaintiffs" or "Travelers") filed the complaint in this action against Walking U Ranch, LLC ("Walking U Ranch"), Kathleen P. March ("March"), Patrick F. Bright ("Bright"), and Does 1 through 10, Inclusive, (collectively "the Insureds" or "RMB"). Dkt. 1 ("Compl."). Travelers asserts the following claims for relief: (1) declaratory relief that Travelers owes the Insureds no duty to defend RMB; and (2) equitable reimbursement for all fees, costs, and expenses paid by Travelers to defend RMB in an underlying action. Dkt. 1.

Travelers insured the Insureds under several Agribusiness Insurance Policies, including the primary insurance policy, No. 700-5F087056-TCT-17 (the "Primary Policy"), and the excess liability insurance policy, No. EX-5F087056-17-93 (the "Excess Policy") (collectively, the "Policy"). Id. at 1, 4. The Insureds were sued in John R. Louderback, et al. v. Walking U Ranch, LLC, et al., Santa Barbara Superior Court Case No. 17-cv-05630 ("the Underlying Action" or the "Louderback Action"), and Travelers agreed to defend the Insureds, while reserving its right to bring this action seeking (1) declaratory relief that Travelers had no duty to defend the Insureds; and (2) seeking

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

equitable reimbursement of all fees, costs, and expenses paid by Travelers to defend the underlying action. Id.

On May 14, 2018, the Insureds filed an answer and asserted counterclaims against Travelers for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) unfair, deceptive, unlawful, and fraudulent business practices in violation of California Business & Profession Code § 17200 et seq. Dkt. 12.

On June 15, 2018, Travelers moved for summary judgment. Dkt. 19. On August 6, 2018, the Court denied Travelers' motion for summary judgment, concluding that Travelers owed a duty to defend the Insureds with respect to the underlying action. Dkt. 35 ("2018 Summary Judgment Order"). The Court reasoned that "[b]ecause the aforementioned allegations [in the Underlying Action] reveal potential liability for slander of person for purposes of Coverage B [of the Primary Policy], and because the operative complaint in the Underlying Action could be amended to assert this claim, the Insureds have demonstrated that there is potential coverage as to the Underlying Action." Id. at 13. Accordingly, the Court "grant[ed] the Insureds' Rule 56(f) request for summary judgment with respect to Travelers' claim for declaratory relief as to the duty to defend." Id. at 17. The Court declined to grant summary judgment in favor of the Insureds on the issue of Travelers' duty to indemnify. See id. at 13.

On November 3, 2021, the Insureds filed an amended motion for summary judgment, requesting that the Court order Travelers to pay (1) $616,695 in attorneys' fees necessarily expended to defend the Insureds in the Underlying Action; and (2) $101,122 in additional fees for the "reasonable and necessary work" of Cumis counsel. Dkt. 131. On December 17, 2021, Travelers filed a cross-motion for partial summary judgment, arguing that Travelers had no further duty to defend the Underlying Action. Dkt. 139.

On March 10, 2022, the Court denied the Insureds' motion for summary judgment, finding that Travelers is entitled to judgment that it is not required to pay for attorneys' fees billed by March and Bright for work they performed through their law firm, The Bankruptcy Law Firm ("BLF"), in connection with the Underlying Action. Dkt. 173 ("2022 Summary Judgment Order") at 34. The Court also granted Travelers' motion for partial summary judgment, finding that Travelers no longer had a duty to defend in the Underlying Action. Id. Additionally, the Court granted Travelers' motion for summary

judgment on the Insureds’ counterclaims. Id. On March 17, 2022, the Court entered a final judgment reflecting its March 10, 2022, rulings. Dkt 179 (the “Final Judgment”).

On April 6, 2022, the Insureds appealed the March 17, 2022 Final Judgment to the Ninth Circuit. Dkt. 188. On April 19, 2023, the Ninth Circuit affirmed the Court’s grant of summary judgment to Travelers on the Insureds’ claim for a bad faith breach of the insurance policy and request for attorneys’ fees. Dkt. 196.

In its memorandum decision, the Ninth Circuit specifically held in relevant part that: (1) “The Insureds may not recover attorney’s fees from Travelers for work that the former performed representing themselves in an underlying property dispute … for which Travelers had a duty to defend the Insureds”; (2) “Because Travelers did not breach its duty to defend the Insureds by failing to pay the requested attorney’s fees, we affirm the district court’s grant of summary judgment to Travelers on the Insureds’ claim for bad faith.” Id. at 2, 4.

On September 11, 2023, the Court held a scheduling conference to determine the remaining issues in the case following the Ninth Circuit’s decision. Dkt. 206. On October 5, 2023, the Court requested supplemental briefing addressing, among other issues, whether this Court’s decision granting Travelers motion for partial summary judgment forecloses the Insured from claiming reimbursement for the shortfall between Cumis counsel’s hourly rates and the $200/hour rate paid by Travelers. Dkt. 208.

On October 24, 2023, the Court issued an order finding that “the dispute over the appropriate rates for Cumis counsel and the corresponding scope of required discovery should be resolved by arbitration pursuant to Section 2860. Cal. Civ. Code § 2860.” Dkt. 214.

On November 8, 2023, Travelers filed a motion for reconsideration of the Court’s October 24, 2023 order. Dkt. 215. On December 13, 2023, the Court denied Travelers’ motion. Dkt. 220.

The only relevant claim that remains in this case is Travelers’ claim against the Insured for equitable reimbursement of all fees, costs, and expenses paid by Travelers to defend the underlying action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

On November 8, 2024, Travelers filed a motion for a bench trial on its remaining claim for equitable reimbursement. Dkt. 244. On December 9, 2024, the Court granted Travelers' motion for a bench trial on Travelers' remaining claim for equitable reimbursement. Dkt. 252.

On February 18, 2025, the Insureds filed a motion for summary judgment on Travelers' remaining equitable reimbursement claim and a motion to strike the report of Jacqueline Vinaccia, Travelers' expert. Dkt. 255. On March 31, 2025, the Court denied the Insureds' motion for summary judgment and motion to strike. Dkt. 272 ("2025 Summary Judgment Order"). The Court "f[ound] that the defense fees and costs expended by Travelers would be reimbursable unless, as the Insureds contend, they were incurred to defend the potential of a defamation claim which could have been added before the entry of judgment." Id. at 2. In other words, the Court "f[ound] that monies paid, which Travelers claims 'can be allocated solely to the claims that are not even potentially covered,' would be reimbursable unless it is correct that the potential of the defamation claim being added gave rise to expending fees to prove what was said about Louderback was true." Id. at 12 (citations omitted).

On April 29, 2025, the Insureds filed a motion for reconsideration of the Court's March 31, 2025 Summary Judgment Order. Dkt. 277. On June 2, 2025, the Court denied the Insureds' motion for reconsideration. Dkt. 282 ("2025 Denial of Reconsideration").

On August 15, 2025, the Insureds filed a notice and copy of the section 2860 arbitrator's binding award and decision, obtained pursuant to the Court's October 24, 2023 Order. Dkt. 283 ("Arbitrator's Decision"). The section 2860 arbitrator, Craig S. Meredith, on July 30, 2025, "f[ound] that Travelers has failed to meet its burden of proof under Section 2860 that would allow it to limit the hourly rates of Cumis counsel to panel rates and accordingly [found that] the appropriate hourly rates are those actually charged by independent counsel, as follows: Ogden & Fricks, LLP: $340/hour for partners, $275/hour for associates Proctor, Shyer & Winters, LLP: $350/hour for partners, $150/hour for associates Park Jensen, LLP: $300/hour for partners." Dkt. 283 at 11.

From December 2, 2025 to December 5, 2025, the Court conducted a bench trial on Travelers' remaining equitable reimbursement claim. Dkts. 323-327. Travelers was represented by Aaron C. Agness and Wunn C. Kaneshiro. The Insureds were represented by Kathleen P. March and Patrick F. Bright.

Travelers called the following witnesses: Melissa Skulrak; Jacqueline S. Vinaccia, Esq.; Christopher Sutton, Esq.; Roy Ogden, Esq.; James Procter, Esq.; Sue Park, Esq.; Anton Jensen, Esq.; Kathleen P. March; and Patrick F. Bright.

RMB called the following witnesses: Kathleen P. March; Patrick F. Bright; Anton Jensen, Esq.; and Sue Park, Esq.

On March 30, 2026, Travelers filed their closing trial brief. Dkt. 343 ("Travelers Brief"). On May 1, 2026, RMB filed their post-trial brief. Dkt. 345 ("RMB Brief"). On May 15, 2026, Travelers filed their reply brief. Dkt. 347 ("Travelers Reply"). On May 28, 2026, RMB filed their sur-reply brief. Dkt. 349 ("RMB Sur-reply").

On March 30, 2026, Travelers filed a motion to strike one of RMB's proposed exhibits and testimony by Patrick Bright and Kathleen March. Dkt. 344 ("Mot. strike"). On May 1, 2026, RMB filed an opposition to Travelers' motion. Dkt. 346 ("Opp. to mot. strike"). On May 15, 2026, Travelers filed a reply. Dkt. 348 ("Reply to mot. strike").

On August 13, 2026, the Court issued a tentative ruling. Dkt. 350. On August 25, 2026, RMB filed an objection. Dkt. 351 ("RMB Obj."). On August 26, 2026, Travelers filed an objection. Dkt. 353 ("Travelers Obj."). On August 26, 2026, the Court ordered Travelers to file a response to RMB's objection. Dkt. 352. On August 31, 2026, RMB filed a response to Travelers' objection. Dkt. 354 ("RMB Resp."). On September 2, 2025, Travelers filed a response to RMB's objection. Dkt. 355 ("Travelers Resp.").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. FINDINGS OF FACT

The following facts are not meaningfully subject to dispute and are set forth for purposes of background. The following findings of fact are not affected by Travelers' motion to strike, dkt. 344, which is discussed in Section IV.

### A. The Policy

RMB are named insureds under an Agribusiness policy issued by Travelers Indemnity Company of Connecticut. Dkt. 20-3 ("Primary Policy").

The Primary Policy states in relevant part:

> **SECTION I – COVERAGES**
>
> …
>
> **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1. Insuring Agreement.**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply …

Id. at TR009578.

Form CG D4 71 01 15 of the Policy further states in relevant part:

> **AMENDMENT OF DEFINITION OF PERSONAL AND ADVERTISING INJURY**
>
> The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:
>
> "Personal and advertising injury" means "personal injury" or "advertising injury[.]" …
>
> **G. ADDITIONAL DEFINITIONS**
>
> …
>
> **"Advertising injury"**
>
> **a.** Means injury, other than "personal injury", caused by one or more of the following offenses: **(1)** Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods,

products or services, provided that the claim is made or the “suit” is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; …

…

**“Personal injury”**

**a.** Means injury, other than “advertising injury”, caused by one or more of the following offenses: … **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling, or premises; **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person’s or organization’s goods, products or services, provided that the claim is made or the “suit” is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; …

Id. at TR009596, TR009598, TR009599.

**B. The Underlying Action**

On December 12, 2017, John R. Louderback and Jacqueline Louderback (“the Louderbacks”) sued RMB in the Underlying Action.

In the Underlying Action, the Complaint and First Amended Complaint in the Louderback Action asserted the following claims against RMB: (1) quiet title; (2) declaratory relief; (3) interference with easement; (4) nuisance; (5) slander of title; (6) unfair competition and unfair business practices, Cal. Buss. & Prof. Code §§ 17200 et seq.; and (7) intentional interference with contractual relations. Dkts. 20-5; 20-8.

On June 1, 2018, the Louderbacks filed a Second Amended Complaint—the operative complaint at the time of trial in the Underlying Action. Dkt. 24-2 (“Louderback Second Amended Complaint” or “Louderback SAC” or “SAC”). The operative Louderback SAC asserted the following claims against RMB: 1) quiet title; (2)

declaratory relief; (3) interference with easement; (4) nuisance; (5) slander of title; (6) unfair competition and unfair business practices, Cal. Bus. & Prof. Code §§ 17200 et seq.; and (7) intentional interference with prospective economic relations. Id. In other words, the Louderback SAC asserted the same first six claims as those alleged in the Complaint and First Amended Complaint, and alleged a seventh claim for intentional interference with prospective economic relations. Id.

At no time did the Louderbacks amend their complaint to add a cause of action for defamation or slander of person. Tr. 12/3/25 8:6-9.

In their SAC, the Louderbacks alleged that they owned 793 acres of land in Santa Barbara County and were entitled to use a recorded easement to access their land by way of a road across the Walking U Ranch property, the neighboring 989-acre ranch. Id. ¶¶ 12, 14, 198. The Louderbacks alleged that the Walking U Ranch is owned by defendant Walking U Ranch, LLC, which in turn is owned by defendants Bright and March, who are husband and wife. Id. ¶¶ 15-19. The Louderbacks alleged that there was a recorded access road easement burdening the Walking U Ranch property that had existed for decades, and that the easement provided the only access to the Louderbacks’ neighboring and otherwise land-locked property. Id. ¶ 313. The Louderbacks further alleged that RMB disputed the validity of the Louderbacks’ access road easement, and that they proceeded to lock an access gate on March 25, 2017, barring the Louderbacks from using the easement, reaching their property, and showing their property to prospective buyers. Id. ¶¶ 148, 258, 300. In the Underlying Action, the Louderbacks sought to quiet title and sought damages for RMB’s alleged interference with their easement. See generally id.

While the Louderbacks never amended their complaint to add a claim for slander of person or defamation, the Louderbacks’ SAC contained the following allegations that could support a claim for slander of person or defamation:

> **249.** … Kathleen P. March stated to David Goller that … “Louderback claims he has an easement to cross my ranch, but when I asked his lawyer for it twice in writing, he didn’t give it to me. So I don’t think he has an easement at all.”
>
> **250.** … Kathleen P. March stated [to an individual named David Goller], “And Louderback lies to practically everybody” and “Not to mention that Louderback stiffs everybody that tries to do business with him, as far as I know.” …

**381.** Defendants acted in bad faith in inventing and disseminating false narratives regarding Plaintiffs and their access road easement.

**382.** Defendants acted in bad faith in inventing and disseminating a false narrative that an alternative legal access road exists over real properties adjoining the 793 acres.

**443.** Kathleen P. March has made false statements to Jake Furstenfeld stating that Plaintiffs do not have an access road easement over the Walking U Ranch property for access to and from the 793 acres. …

**444.** Kathleen P. March has made false statements to deputies of the Santa Barbara County Sheriff's Department. These include that she had no knowledge of any easement benefitting the 793 acres[.] [March] invented a false narrative regarding a "deeded easement," and made other false statements to the deputies.

**449.** All of the foregoing statements made by Defendants that Plaintiffs do not have a valid access road easement over the Walking U Ranch to access the 793 acres are publications. …

**453.** Defendants made the foregoing statements with malice and without reasonable grounds to believe the statements to be true because defendants Kathleen P. March and Patrick F. Bright were provided credible information as far back as August 2010 in the form of a First American Title Company Fourth Amended Preliminary Title Report which disclosed to them an access road easement traversing the Walking U Ranch property to the 793 acres, which was later acknowledged by both of them in writing and confirmed in the Owner's Policy of Title Insurance in September 2010.

**475.** Defendants['] conduct is fraudulent in that Defendants have, knowing their statements to be false and/or with no reasonable basis to believe their statements were true, falsely represented that Plaintiffs do not have an access road easement, created and disseminated a false narrative that an alternative legal road exists, and denied access to the access road easement ….

**476.** Defendants have widely disseminated their false statements to third parties throughout Santa Barbara County, Los Angeles County, and elsewhere ….

> **481.** As a result of those publications, Plaintiffs have suffered damage, including an inability to hire contractors, improperly prejudicing law enforcement personnel against Plaintiffs and their claims ….

Louderback SAC.

On September 10, 2018, RMB filed a cross-complaint (i.e., a counter-complaint) against the Louderbacks. On December 3, 2018, RMB filed an amended cross-complaint. Exhibit 14-15. On May 1, 2019, RMB filed their operative second amended cross-complaint, asserting the following claims: (1) quiet title; (2) declaratory relief (that the Louderbacks have no right to cross the Walking U Ranch property); (3) declaratory relief (that Walking U Ranch had the right to lock its gates); (4) declaratory relief (that Walking U Ranch had the right to lock its gates to protect itself from potential liability for injury); (5) fraudulent concealment; (6) negligent concealment of material information; (8) financial elder abuse of Patrick Bright; and (9) declaratory relief (regarding whether the court should ward Louderbacks an equitable easement). See Exhibit 17 at 2-3.

The Underlying Action proceeded to trial on August 26, 2019, and continued for nineteen days from time to time until September 26, 2019. Exhibit 17 (May 17, 2021 Statement of Decision) at 5. At trial in the Underlying Action, the Louderbacks did not seek damages for defamation. See id. In their post-trial closing briefs, the Louderbacks did not seek damages for defamation. See Travelers Exs. 150-157, 160; see also Travelers Exs. 206, 209, 210, 211, 216, 233, 235, 239.

"The [trial] court [in the Underlying Action] heard closing arguments on July 16 and 23, 2020. The court took the case under submission. On October 23, 2020, the court issued an Order Setting Case Management Conference for January 4, 202[1], in which it announced its tentative decision in favor of LLC/March/Bright 'other than on the remaining issue of a possible easement by necessity.' The [trial] court further ordered the parties to show cause why the court should not just enter judgment in this case and dismiss the [easement by] necessity cause of action without prejudice unless the Louderback parties are willing to now join all adjacent landowners." Exhibit 17 at 5.

On May 17, 2021, the trial court issued its Statement of Decision, authored by Judge James F. Rigali, in favor of RMB on the parties' easement dispute, finding that

"the Louderbacks[] do not possess an express easement to enter or cross [Walking U Ranch] LLC's 989 acres by virtue of the right of Way." Exhibit 17 at 9. The court stated that "[t]his ruling resolves all causes of action in Louderbacks' Second Amended Complaint against [RMB] to the extent the cause of action relies upon an express grant of an easement pursuant to the 1972 Right of Way [easement]." Id. The trial court further found that the "Louderbacks failed to meet their burden to prove the existence of an implied easement, prescriptive easement, … equitable easement," or easement by necessity. Id. at 10. The trial court also found in favor of RMB their first and second crossclaims against the Louderbacks, found that RMB's third and fourth crossclaims were rendered moot by the court's rulings against the Louderbacks, and found against RMB on their fifth crossclaim for intentional concealment and on their eighth crossclaim for elder abuse of Patrick Bright. See id. at 9-13.

On December 22, 2021, the trial court entered judgment consistent with its May 17, 2021 Statement of Decision, dismissing the Louderbacks' SAC and quieting title in favor of Walking U Ranch LLC. Exhibit 18. The trial court's May 17, 2021 Statement of Decision and its December 22, 2021 judgment did not discuss any claim for defamation, which was never asserted by the Louderbacks in the Underlying Action. Travelers Exs. 17, 18.

### C. Travelers' Defense of the Underlying Action

By letter dated December 19, 2017, the Insureds tendered the Louderback Action to Travelers for defense and indemnity. Dkt. 267 ¶ 21.

By letter dated January 26, 2018, Travelers agreed in writing to provide a defense to the Insureds under a reservation of rights. Among other things, Travelers reserved its right to seek reimbursement of defense fees and costs. Id. ¶¶ 22-24.

Over the course of the Louderback Action, the Insureds were represented, in succession, by the following Cumis counsel: (1) Ogden & Fricks LLP ("Ogden"); (2) Procter, Shyer & Winters LLP ("Procter"); and (3) Park Jensen LLP ("Park Jensen"). Dkt. 173 at 8-12.[1]

[1] Travelers initially retained Thomas Dowling of Hager & Dowling ("Dowling"), without the approval of the Insureds, to defend the Insureds in the Underlying Action. Thereafter,

Travelers paid a total sum of $548,423.92 in legal fees and costs to defend RMB in the Underlying Action. Exhibit 5 at 2. However, Travelers seeks $547,591.92 in equitable reimbursement.[2] Almost the entirety of the $548,423.92 sum paid by Travelers consists of attorney’s fees paid to The Bankruptcy Law Firm (March and Bright’s law firm), Ogden, Procter, and Park Jensen; the remainder of the sum consists of attorney’s fees paid to Dowling and other miscellaneous costs.[3] Id. at 1-2.

RMB asserts that it paid $205,000 to Cumis counsel, an amount allegedly equivalent to the shortfall in fees owed to Cumis counsel following the section 2860 arbitrator’s decision that the correct hourly rates that were owed to Cumis counsel were

---

a dispute arose as to whether Dowling had a conflict of interest, whereby he favored Travelers over the Insureds. Because of this dispute, Dowling ultimately declined to represent the Insureds. Dkt. 173 at 8.

[2] Travelers paid a total sum of $548,423.92 for RMB’s defense in the Underlying Action, which includes $832 paid to Hager & Dowling, the panel counsel retained by Travelers before RMB was represented by Cumis counsel. Travelers does not seek reimbursement of the amount paid to Hager & Dowling and as such, Travelers’ seeks $547,591.92 in equitable reimbursement. Travelers Brief at 7 n.3.

[3] Specifically, the Court has calculated that Travelers paid the following amounts in connection with RMB’s defense in the Underlying Action.

| PAYMENTS MADE BY TRAVELERS | |
|---|---|
| PARK JENSEN, LLP | $ 299,554.55 |
| THE BANKRUPTCY LAW FIRM | $ 158,804.56 |
| OGDEN & FRICKS, LLP | $ 52,720.34 |
| PROCTER, SHYER & WINTER, LLP | $ 24,045.72 |
| HEBDA PROPERTY & TITLE SOLUTIONS | $ 4,590.00 |
| ESQUIRE DEPOSITION SOLUTIONS, LLC | $ 4,063.90 |
| NETWORK DEPOSITION SERVICES | $ 3,312.85 |
| HAGER & DOWLING, SANTA BARBARA | $ 832.00 |
| DAVID H. BUNCH INVESTIGATIONS, INC. | $ 500.00 |
| **TOTAL** | $ 548,423.92 |

See Exhibit 5 at 1-2.

those actually charged by Cumis counsel and exceeded the panel rates paid by Travelers. See Dkt. 283 at 11. However, the only evidence submitted by RMB as to the amounts that they paid to Cumis counsel indicates that RMB paid $186,498.18 to Cumis counsel.[4] Travelers does not appear to dispute that RMB paid Cumis counsel to cover the shortfall in fees owed to them. See generally Travelers Brief; Travelers Reply. Accordingly, the Court finds that RMB paid $186,498.18 to Cumis counsel.

Each of these findings of fact may be deemed to be a conclusion of law.

## III. CONCLUSIONS OF LAW

Under the California Supreme Court's holding in Buss v. Superior Court, an insurer may be able to seek a reimbursement for certain defense costs incurred on behalf of the insured if the insurer has properly "reserved its rights" to do so. 16 Cal. 4th 35, 51 (1997); see also Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 279 (1966) ("[I]f the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment [against its insured]"). The insurer can properly reserve its rights by providing unilateral notice to the insured that it is undertaking the defense subject to the

[4] See Tr. 12/5/25, Dkt. 339, 11:2-7 (Defendant Bright explaining that Exhibit 340, Dkt. 316, consists of the checks that RMB paid to Cumis counsel to cover the shortfall in fees owed to Cumis counsel as a result of Travelers' underpaying counsel). Based on the checks that RMB submitted into evidence, the Court has calculated that RMB paid a total of $186,498.18 to Cumis counsel—specifically, $144,717.24 to Park Jensen; $19,057.50 to Procter; and $22,723.44 to Ogden. See Dkt. 316 (Exhibit 340).

Travelers objects to the Court's consideration of two checks submitted into evidence by RMB. See Travelers Resp. at 4. The first disputed check, dated June 1, 2018, is made out in the amount of $8,419.56 to Ogden. See Dkt. 316 at 9. This check appears to have an "X" running through the check's text, accompanied by the word "VOID." Id. The second disputed check, dated June 15, 2019, is made out in the amount of $9,050.00 to Park Jensen. See id. at 19. This check displays multiple overlapping writings, including in the sections of the check displaying the amount paid. See id. The Court agrees with Travelers that these two checks provide unconvincing evidence of payment. Accordingly, the Court did not include the two checks in its calculation that RMB paid $186,498.18 to Cumis counsel.

right to seek reimbursement if it later turns out certain claims are not even potentially covered under the policy. Prichard v. Liberty Mut. Ins. Co., 84 Cal. App. 4th 890, 905-6 (2000). This notice effectively “permits the insured to decide whether to accept the insurer’s terms for providing a defense, or instead to assume and control its own defense.” Scottsdale Ins. Co. v. MV Transp., 36 Cal. 4th 643, 656 (2005) (citing Buss, 16 Cal. 4th at 61 n.27).

“[I]n a ‘mixed’ action, in which some of the claims are at least potentially covered and the others are not … the insurer may not seek reimbursement for defense costs” for “[a]s to claims that are at least potentially covered.” Buss, 16 Cal. 4th at 47-49. “[T]he insurer [may] obtain reimbursement from the insured … specific [d]efense costs that can be allocated *solely* to the claims that are not even potentially covered.” Id. at 52 (emphasis added). An insurer has “no right to be reimbursed for costs jointly allocable to claims that were actually or potentially covered under the policy because it would have had to expend such costs in any event.” Croskey et al., Cal. Practice Guide: Insurance Litigation, § 7:758 (citing Buss, 16 Cal. 4th at 52-53) (emphasis omitted). In other words, “[c]osts for work that also helped the defense of the other claims that were potentially covered [are not reimbursable to the insurer].” Judicial Council of California Civil Jury Instructions CACI No. 2351 (2026). “As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs.” Buss, 16 Cal. 4th at 50.

The burden is on the insurer to prove, by a preponderance of the evidence, that certain defense costs are solely allocable to non-covered claims. Id. at 52-53. The insurer’s burden, “‘if ever feasible, may be ‘extremely difficult.’” Id. at 57-58 (quoting Hogan v. Midland Nat’l Ins. Co., 3 Cal. 3d 553, 564 (1970)).

## IV. TRAVELERS’ MOTION TO STRIKE

Travelers moves to strike excerpts from transcripts of Melissa Skulrak’s depositions, dkt. 324, and certain trial testimony of Patrick Bright and Kathleen March that Travelers contends are inadmissible legal conclusions. Mot. strike at 1-2.

### A. Deposition Transcripts of Melissa Skulrak

Travelers argues that the deposition transcripts of Melissa Skulrak, Travelers’ employee and claims adjustor, should be stricken for several reasons. First, Travelers

argues that “pursuant to Local Rule[s] 16-2.7, 16-4, and 16-6, Defendants were required, prior to the final pretrial conference, to identify the pertinent portions of Skulrak’s deposition transcript and inform Travelers of their intent to use specific portions of the deposition transcript at trial.” However, “[RMB] did not do so” and improperly attempted to introduce Skulrak’s deposition transcript for the first time at trial. Id. at 4. Second, Travelers argues that Skulrak’s deposition transcripts are inadmissible because a party may not introduce deposition testimony of a witness unless they are unavailable, and not where the witness is available and provided live testimony at trial, as Skulrak did in this case. Id. Third, Travelers argues that Skulrak’s deposition testimony may not be admitted under Fed. R. Civ. P 32(a)(2)[5] because RMB did not list Skulrak as a witness; therefore, any cross-examination of Skulrak must be limited to the substance of her testimony on direct. Moreover, Travelers argues that RMB did not attempt to impeach Skulrak’s testimony at trial with her deposition transcripts. Id. Fourth, Travelers argues that Skulrak’s deposition testimony may not be admitted under Fed. R. Civ. P 32(a)(3) because Skulrak is not an officer, director or managing agent of Travelers; moreover, Travelers argues that Skulrak was not deposed in her capacity as a Rule 30(b)(6) designee. Id. at 5.

In opposition, RMB argues that the Travelers’ Supplemental Interrogatory Responses to RMB’s Interrogatories contained within Dkt. 324 are admissible because they constitute an opposing party’s statement. Opp. to mot. strike at 25-30.

In reply, Travelers repeats its arguments. Reply to mot. strike at 2-4.

The Court declines to strike excerpts of Skulrak’s deposition testimony contained within Dkt. 324. Fed. R. Civ. P 32(a) provides that “[a]ny party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence.” Here, Skulrak’s deposition is admissible pursuant to Fed. R. Evid. 801(d)(2)(D) as an opposing party’s statement “made by the party’s agent or employee on a matter within the scope of that relationship

[5] Fed. R. Civ. P. 32(a)(2) provides:

> *Impeachment and Other Uses*. Any party may use a deposition to contradict or impeach the testimony given by the deponent as a witness, or for any other purpose allowed by the Federal Rules of Evidence.

and while it existed." Such testimony is admissible under Fed. R. Evid. 801(d)(2), regardless of whether Skulrak was available to testify or in fact testified at trial.

Moreover, the Court declines to strike Travelers' responses to RMB's interrogatories, signed by Wynn C. Kaneshiro on behalf of Travelers, contained within Dkt. 324. Travelers' interrogatory responses are admissible. See Fed. R. Civ. P. 33(c) ("An answer to an interrogatory may be used to the extent allowed by the Federal Rules of Evidence."). Here, Travelers' interrogatory responses are admissible under Fed. R. Evid. 801(d)(2) as an opposing party's statement made by Travelers.

Accordingly, the Court **DENIES** Travelers' motion to strike Dkt. 324, consisting of excerpts of Melissa Skulrak's deposition transcripts and Travelers' Supplemental Interrogatory Responses to RMB's Interrogatories.

**B. Testimony of Patrick Bright and Kathleen March**

Travelers argues that certain testimony of Patrick Bright and Kathleen March are inadmissible because they constitute improper legal conclusions. Travelers argues that Patrick Bright testified to the following:

1. There is coverage under the Policy for the "disparagement" alleged in the Louderbacks' Second Amended Complaint ("SAC") and that the SAC alleges disparagement of goods. [4 RT 7:1-7:11, 8:1-6, 18:15- 19:22]
2. There is coverage under the personal and advertising injury section of the Policy for the damages resulting from locking the gate and not allowing Louderback access. [4 RT 9:6-10:15]
3. There is coverage under the Policy for the entire SAC. [4 RT 20:23- 23:1]
4. The Insureds are entitled to prejudgment interest on the shortfall that the Insureds paid direct to Cumis counsel. [4 RT 35:17-36:15]
5. That Travelers inequitably obtained benefit from legal work performed by March and Bright. [4 RT 32:21-33:10, 34:5-10]
6. That Travelers acted with unclean hands by failing to cite to the Charlotte Russe case and failing to pay the arbitrated rate. [4 RT 25:24-32:20]
7. Travelers was obligated to pay Sue Park's fees incurred as independent contractor and therefore this sum should be a set-off. [4 RT 85:12-20]

Travelers argues that Kathleen March testified to the following:

1. Travelers is obligated to pay 10% prejudgment interest on the difference between the $200 hourly rates paid to Cumis counsel and the arbitrator's hourly rates. [4 RT 100:23-101:16]
2. Travelers owes $13,811 for money owed during the gap period. [4 RT 109:14-110:12]
3. Travelers is not entitled to equitable reimbursement for the defense fees and costs in paid in the underlying action. [5 RT 3:20-5:5]

Travelers argues that the above statements constitute inadmissible legal conclusions. Id at 7.

In opposition, RMB argues that the Court should not strike Bright's testimony because he was a properly designated expert for RMB who "did not seek to tell the Court the law, but, instead, provided the factual bases for the Court to make the ultimate legal decisions, under the applicable law." Opp. to mot. strike at 5. RMB argues that Bright provided expert testimony concerning an ultimate issue. Id. at 7. With respect to March's testimony, RMB argues that her testimony should not be stricken because she is a percipient witness who testified not as to legal conclusions but as to her reasonable expectations that she was entitled to reimbursement from Travelers. Id. at 22-25.

In reply, Travelers argues that "the testimony listed above is not about ultimate facts, but rather legal conclusions." Reply to mot. strike at 6.

"[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704(a). "That said, an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004). The Court has reviewed the portions of March's and Bright's testimony challenged by Travelers and finds that they constitute inadmissible legal conclusions on ultimate issues of law, including conclusions regarding Travelers' coverage obligations under various provisions of the the Policy, the Insureds' entitlement to prejudgment interest, and Travelers' legal obligations to pay damages to the Insureds.

Accordingly, the Court **GRANTS** Travelers' motion to strike certain portions of March and Bright's testimony, described above.

## V. THE PARTIES’ ARGUMENTS

The Court proceeds to discuss the parties’ arguments regarding Travelers’ entitlement to equitable reimbursement for attorneys’ fees and costs it paid in defending RMB in the Underlying Action.

### A. Travelers’ Trial Brief

In its closing trial brief, Travelers argues that it has established that it paid for certain defense fees and costs that are solely allocable to non-covered claims under the Policy. Travelers Brief at 15. Travelers argues that “the vast majority of the fees and costs were solely related to the non-covered claims of quiet title, interference with title, and slander of title,” and that “Travelers has no obligation to pay for fees and costs solely related to the[se] noncovered claims.” Id. at 16. Travelers argues that “there are no documents or billing entries related to defamation of person,” and that the attorneys who undertook RMB’s defense in the Underlying Action never engaged in any legal work to defend against defamation. Id. at 16. Moreover, Travelers argues that counsel for the Louderbacks in the Underlying Action, Christopher Sutton, testified that the Louderback Action was not a defamation of person case because none of the discovery was aimed at defamation of person; that Sutton did not take any steps toward proving defamation of person; that the Louderbacks did not seek damages for defamation; and that defamation was not an issue at trial. Id. at 14. Similarly, Travelers argues that its expert, Jacqueline Vinaccia, opined that “there was not a single entry regarding defamation of person in the billing invoices.” Id. at 13-14.

Travelers argues that the vast majority of legal work done by RMB’s Cumis counsel are reimbursable to Travelers:

Travelers argues that the demurrers, motions to strike, and motions for summary judgment filed by both RMB and the Louderbacks in the Underlying Action never pertained to defamation of person. Id. at 17. Accordingly, Travelers argues that it is entitled to reimbursement for costs incurred in preparing such motions. Moreover, Travelers argues that the work completed by RMB’s defense counsel relating to researching easement rights, obtaining and reviewing property records, hiring experts, and conducting property inspections “were solely related to the Louderbacks’ easement claim” which “has no bearing on the potentially covered allegations of defamation of

person.” Id. at 18, 20. Accordingly, Travelers contends that fees and costs incurred by defense counsel in relation to such easement matters are reimbursable to Travelers. Id. Travelers also argues that the post-trial briefs filed by RMB’s defense counsel in the Underlying Action are reimbursable to Travelers because they contain “no discussion about … potentially defamatory statements” and “deal with whether the Louderbacks are entitled to *an easement by necessity*, [given that] Judge Rigali’s Order stated that the remaining issue [after trial] was the possible easement by necessity.” Id. at 18. Therefore, Travelers argues that the fees and costs paid by Travelers for all post-trial briefs are reimbursable. Id. Similarly, Travelers argues that all written discovery between the Louderbacks and RMB “related solely to the quiet title and easement issues”; accordingly, discovery fees and costs incurred by RMB’s defense counsel are reimbursable. Id. at 20.

Travelers argues that “there was no possibility at trial that the Louderbacks could amend the[ir] pleading to add [a] defamation of person” claim against RMB. Id. at 19. This is so, Travelers argues, because Kathleen March testified at trial that in the Underlying Action, RMB filed a motion *in limine* on to preclude the Louderbacks from offering any evidence of money damages at the time of the Louderback trial which commenced on August 26, 2019, Exhibit 17; Travelers argues that because Judge Rigali subsequently granted RMB’s motion *in limine*, filed on August 21, 2019, Exhibit 64, to exclude evidence of damages at trial in the Underlying Action, and because “one of the elements of defamation of person is damages,” “[Judge Rigali’s] granting of the motion *in limine* meant that there was no possibility at trial that the Louderbacks could amend the pleading to add defamation of person.” Id. In other words, Travelers argues that “[t]here was no way for the Louderbacks to seek to amend to add a defamation of person claim when the Louderbacks were not even allowed to establish damages, one of the required elements.” Id. Travelers argues that because “no damages were allowed to be presented [at trial], … all trial preparation and attendance were related to the easement claims,” and all fees and costs incurred at trial and in preparation for trial—at least after Judge Rigali’s decision on RMB’s motion *in limine*—are reimbursable. Id.

Travelers further argues that because this Court determined that Travelers had no duty to defend RMB in the Louderback Action in an appeal filed by the Louderbacks, all fees and costs paid in connection with representing RMB in the appeal of the Louderback Action are reimbursable. Id. at 21 (citing Dkt. 173). Similarly, Travelers argues that

post-trial work done by RMB’s counsel—including preparing a motion for directed verdict, a statement of decision, a judgment, and memorandum of costs—are reimbursable because such post-trial work related solely to the causes of action litigated at trial, which do not include a cause of action for defamation of person. Id. at 21.

Travelers next argues that it is entitled to reimbursement for fees and costs incurred in prosecuting RMB’s cross-complaint against the Louderbacks because the cross-complaint asserted only claims to quiet title to the easement, declaratory relief, fraudulent concealment, negligent concealment of material facts, and financial elder abuse—none of which relate to defending against a potential defamation claim. Id.

Travelers also argues that it is entitled to reimbursement for fees and costs incurred by RMB “in connection with seeking coverage from Travelers” because such efforts were “not part of [RMB’s] defense [of] the potential defamation of person claim” that could have been asserted against them in the Underlying Action. Id. at 22.

Travelers argues that it is entitled to reimbursement for all attorney’s fees paid to Sue Park “from February 18, 2018 to September 9, 2018 when she was working as a contract attorney for BLF.” Id. at 22. Travelers argues that the work done by Sue Park during this period was conducted before the Park firm was appointed as RMB’s Cumis counsel; accordingly, Travelers has no obligation to pay for such costs. Id.

Finally, Travelers argues that it is only obligated to pay for reasonable attorney’s fees and costs incurred by RMB’s Cumis counsel in connection with defending RMB against the potential of a defamation claim. Id. at 22-23. Travelers argues that it is entitled to reimbursement for all unreasonable fees incurred, including “1) excessive billing by Cumis counsel in instructing [RMB] in litigation procedures in order to facilitate [RMB] in performing legal work in the Louderback Action; 2) start-up time incurred in having successive counsel; 3) tasks that are block billed; 4) clerical work; 5) duplicative or double billing; 6) voicemails; and 7) computer research.” Id. at 23. Similarly, Travelers argues that it is entitled to reimbursement for costs expended by Cumis counsel in filing motions to withdraw and to file a “a 106-page motion to preclude John Louderback from testifying at trial.” Id. at 23-24.

Travelers argues that RMB’s three arguments in opposition to Travelers’ position fail. First, Travelers argues RMB’s argument that there is potential for coverage under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

the Policy for a slander of title claim is meritless. Id. at 24. Travelers argues that, as an initial matter, "this Court's [previous] determination that there was no potential for coverage for the causes of action alleged by the Louderbacks is law of the case." Id. at 25. Accordingly, Travelers argues that RMB may not relitigate this Court's finding in multiple orders "that the only potentially covered claim in the Louderback's SAC was the potential cause of action for defamation of person, which was based on various stray allegations in the SAC." Id. at 25. Substantively, Travelers argues that the Policy, which provides liability coverage for claims against the Insureds asserting damages caused by disparagement of a person's "goods, products or services," does not cover claims for slander of title. Id. at 26. Travelers argues that "California courts have consistently held that … real property disputes [involving claims for slander of title] involve intangible property rights rather than the personal reputation interests [which are] protected by personal injury coverage" in the Policy. Id. (citing cases). Travelers argues that the Louderbacks' SAC alleged that RMB "disparaged" the Louderbacks' easement rights, which is not a "good, product, or service." Id. at 27.

Second, Travelers argues that there is no merit to RMB's argument that all defense work conducted by Cumis counsel in the Underlying Action are not reimbursable because they served the dual purpose of defending against the pleaded causes of action in the Louderback Action and against the potential of a defamation claim covered under the Policy and which was never asserted. Id. at 28. Travelers argues that Cumis counsel's work in disproving the claims asserted in the Louderback Action—including the lack of existence of Lounderbacks' alleged easement over the Walking U Ranch property—"would not dispose of a defamation of person cause of action" because the issue of "[w]hether the Louderbacks had an easement, and whether Ms. March lied about the Louderbacks having an easement, are unrelated to defamation of person." Id. at 29. Travelers argues that "false statements about an easement are not defamation of person[;] they are slander of title." Id. Moreover, Travelers argues that defending a slander of title claim is a distinct task from defending a defamation claim because "the elements of slander of title and defamation of person are not the same"—namely, under California law, a slander of title claim under California law requires the plaintiff to prove "that the defendant published a [false] statement that disparaged title to property … [that] cause[s] pecuniary loss"; by contrast, a personal defamation claim requires "proof of a [false and unprivileged] publication to a third party … [that causes] reputational harm" to the plaintiff. Id. at 30. Travelers thus argues that Cumis counsel's efforts in "disproving

[that Louderbacks had an] easement [did not] serve[] a dual purpose for defending against the non-pled defamation of person cause of action." Id. at 31.

Travelers further argues that "even if the Court were to find that disproving an easement … helped defend against an unpled cause of action for defamation of person … [such finding] does not [require a finding] that 'all' easement related work served a dual purpose." Id. at 32. Travelers argues that "work performed defending against the … common law easements could not serve a dual purpose" because the Louderbacks' allegation that Kathleen March falsely claimed that the Louderbacks did not have an access road easement over the Walking U Ranch property regarded "Louderbacks' claim of an express easement." Id. at 33. Travelers argues that "Ms. March's [allegedly false] comments could not be about a common law easement that the Louderbacks were seeking ***prospectively*** as an alternative form of relief." Id. at 33. Accordingly, Travelers argues that Cumis counsel's work in defending RMB against the Louderbacks' allegations regarding the existence of common law easements over the Walking U Ranch property are reimbursable. Id. at 33.

Third, Travelers argues that there is no merit to RMB's contention that Travelers acted with unclean hands and is estopped from pursuing equitable reimbursement. Id. at 34. Travelers argues that "there are no California cases applying the doctrine of "unclean hands" in cases involving Cumis fee and equitable reimbursement disputes." Id. at 35. Travelers further argues that it did not engage in "misconduct warranting the application of the doctrine of 'unclean hands,'" given that it reserved the right to dispute the correct Cumis rates in section 2860 arbitration and given that the Court has previously granted Travelers' motion for summary judgment on RMB's claims for breach of contract and bad faith. Id. at 35-36 (citing Dkt. 173). Moreover, Travelers argues that it could not have engaged in unclean hands because "Travelers has paid over half a million dollars in defense fees and costs for the Louderback Action, the vast majority of which [Travelers contends] are solely allocable to non-covered claims." Id. at 36. Travelers argues that, although the section 2860 arbitrator subsequently found that RMB's Cumis counsel were entitled to higher hourly rates than Travelers had agreed to pay and in fact paid, this fact alone does not establish that Travelers engaged in unclean hands because "even after factoring in the [section 2860 arbitrator's ruling on proper rates for] Cumis [counsel], [RMB] still owes Travelers reimbursement." Id. at 37.

Travelers contends that “[t]here are multiple ways from which the Court can determine the resulting amount owed to Travelers for reimbursement.” Id. at 37. First, Travelers argues that the Court may calculate the reimbursement amount owed to Travelers by adopting the methodology used by Travelers’ equitable reimbursement expert Jacqueline Vinaccia. Id. at 37. Travelers argues that Vinaccia’s reimbursement calculations are based on Cumis counsel’s work “solely allocable to non-covered claims” (which would be reimbursable), counsel’s work “not solely allocable to non-covered claims” (which would not be reimbursable), and also take into account the correct hourly rates for Cumis counsel as determined by the section 2860 arbitrator. Id. at 37-43 (emphasis in original). Vinaccia’s ultimate opinion is that Travelers is entitled to $421,932.70 in equitable reimbursement. Id. at 43. Alternatively, Travelers argues that the Court may calculate the amount reimbursable to Travelers based on fees and costs actually paid by Travelers for work that Travelers contends are reimbursable. Id. at 43-44.

**B. RMB’s Trial Brief**

In their closing trial brief, RMB argue that Travelers is not entitled to reimbursement because “Travelers failed to prove that any of the fees Travelers paid to RMB’s Cumis attorneys, or any of the costs that Travelers paid, are properly allocable solely to defense of a [cause of action in the Louderbacks’ operative Second Amended Complaint] that was ‘not even potentially covered’ by the Policy.” RMB Brief at 11. RMB contend that three independent provisions in the Policy provide liability coverage for the claims asserted against RMB in the Underlying Action. Id. at 13. First, RMB argue that the “slanders or libels a person” provision within the Policy’s definitions of personal injury and advertising injury provides coverage against the Louderbacks’ allegations against RMB that March had defamed and disparaged John Louderback personally when she told people that John Louderback did not have an easement over the Walking U Ranch property and when March made other disparaging and defamatory statements regarding John Louderback. Id. at 14. RMB argue that “RMB[’s] lead trial attorney Jensen testified that the most effective way to prove that March did not defame Louderback--by March telling people March did not believe Louderback had an easement--was for RMB to prove Louderback had no easement, which would prove that what March said was true.” Id. at 17. RMB argue that in the Underlying Action, RMB

called various witnesses “to prove [that] the additional unfavorable things March said about Louderback were true” and therefore not defamatory. Id. at 18.

Second, RMB argue that the “disparages a person’s … goods, products or services” provision within the Policy’s definitions of personal injury and advertising injury provides coverage for all seven causes of actions contained in the Louderbacks’ SAC, including the Louderbacks’ allegations that March had disparaged the Lounderbacks’ alleged easement over the Walking U Ranch property when she told people that John Louderback did not have an easement over the Walking U Ranch property. Id. at 14-16, 32-34. RMB contend that the “disparages a person’s … goods, products or services” provision provides coverage against all seven causes of actions in the Louderback SAC—including slander of title—because the term “goods” must be interpreted expansively and includes intangible “goods” such as the Louderbacks’ alleged easement. Id. at 32-34 (citing Travelers Property Casualty Company of America v. Charlotte Russe Holding, Inc., 207 Cal. App. 4th 969, 977-980 (2012) and Atlantic Mutual Ins. Co. v. J. Lamb, Inc.,100 Cal. App .4th 1017, 1034 (2002)).

Third, RMB argue that the “wrongful … invasion of the right of private occupancy” provision within the Policy’s definition of personal injury provides coverage for all seven causes of actions contained in the Louderbacks’ SAC, including the Lounderbacks’ allegations that RMB locked the gates to the Walking U Ranch property and wrongfully prevented the Louderbacks from accessing their alleged easement over the Walking U Ranch property. Id. at 14-16.

RMB also argue that, pursuant to the California Supreme Court’s decision in Aerojet-General Corp v. Transport Indemnity Co, 17 Cal 4th 38 (1997), Travelers is not entitled to reimbursement for attorneys’ fees for legal work in preparing RMB’s cross-complaint against the Louderbacks in the Underlying Action because the cross-complaint served a dual purpose of defending RMB against a potential claim for defamation covered under the Policy. Id. at 25. RMB argues RMB’s cross-complaint against the Louderbacks furthered RMB’s defense against a potential defamation claim because the cross-complaint sought to quiet title over the alleged easement in RMB’s favor and would thus aid in defeating the potential allegation that March’s statements regarding the Louderbacks’ lack of an easement were defamatory. Id. at 25-26. RMB further argues that the cross-complaint assisted with RMB’s defense against a potential defamation claim because the cross-complaint sought damages from the Louderbacks on other causes

of action including fraudulent concealment—damages which could then be “set off against a damages award for [March’s] alleged [defamation] of Louderback” in the event that the Louderbacks asserted and prevailed on a claim for defamation. Id. at 27.

RMB argue that Travelers is not entitled for equitable reimbursement for any costs that Travelers paid in connection RMB’s defense in the Underlying Action because such costs were reasonable and necessary in defending against potential claims covered under the Policy. Id. at 27-29. RMB argues that such non-reimbursable costs include payments to an easement expert who testified on behalf of RMB at trial in the Underlying Action that the Louderbacks’ alleged easement was invalid; payments to a real estate broker to secure his testimony at trial that the Louderbacks had made material misstatements to RMB regarding the Walking U Ranch property when RMB was in escrow to purchase the property; and other payments to procure the deposition testimony of other witnesses who testified that John Louderback was dishonest and had failed to pay his debts in the past. See id. at 29-30.

RMB further argue that Travelers is precluded from obtaining equitable reimbursement under the doctrine of “unclean hands” because Travelers’ counsel “committed an ethical violation by concealing the [Charlotte Russe] case from this Court[] and from RMB.” Id. at 34-35.

Moreover, RMB argue that Travelers has unclean hands and breached its contract with RMB because Travelers knowingly underpaid RMB’s Cumis counsel at the correct hourly rates decided by the section 2860 arbitrator, resulting in a $205,000 shortfall that RMB paid to Cumis counsel. Id. at 31, 36-38. RMB seeks judgment against Travelers for the $205,000 shortfall in Cumis counsel fees that RMB paid, plus 10% simple interest. Id. at 38-39.

RMB argue that the Court should give no weight to the testimony of Jacqueline Vinaccia, Travelers’ expert for several reasons. Id. at 19. RMB argue that Vinaccia’s purported equitable reimbursement analysis is necessarily flawed because Vinaccia failed to independently determine which claims and allegations in the Louderback SAC are potentially covered under the Policy and therefore could not determine which fees and costs are properly reimbursable to Travelers; Vinaccia testified that she does not hold herself out as an equitable reimbursement or insurance coverage expert and thus is not qualified to provide testimony on such matters; Vinaccia’s credibility was “seriously

impeached" because "Vinaccia gave three different, self-contradictory opinions/reports about the sum that Travelers is entitled to"; Vinaccia made "major misstatements of facts about the [Underlying Action], which prove her testimony is unreliable, and therefore inadmissible"; Vinaccia ignored that Travelers' Supplemental Interrogatory Responses admitted that "Travelers … is entitled to reimbursement for all defense fees and cost incurred in the Underlaying Action that do not relate to, refer to or concern the foregoing defamatory allegations."; and Vinaccia had no personal knowledge of either the preparation for trial or what occurred at trial in the Underlying Action. Id. at 19-25.

RMB further argue that Travelers owes RMB $19,395, the amount that March and Bright's law firm, BLF, paid Sue Park in 2018 for legal work that she performed as an "independent contractor" on behalf of BLF. Id. at 39-40. RMB argues that the work that Sue Park performed on behalf of BLF included "draft[ing] pleadings for Cumis attorney Ogden[] when [BLF] was co-counsel to Ogden." Id. at 40. RMB further seeks from Travelers 10% simple interest on the $19,395. Id. RMB argues that the California Supreme Court's decision in Trope v. Katz, 11 Cal. 4th 274 (1995), does not relieve Travelers of its obligation to compensate RMB for the $19,395 that BLF paid to Sue Prak because she performed such legal work as an "independent contractor." Id. at 40.

In short, RMB seek a judgment from this Court finding that: (1) Travelers is not entitled to any amount of equitable reimbursement from RMB for costs and attorneys' fees that Travelers paid for RMB's defense in the Underlying Action; (2) Travelers owes RMB $205,000 plus 10% simple interest, equivalent to the shortfall in fees that RMB paid to Cumis counsel; and (3) Travelers owes RMB $19,395 plus 10% simple interest for legal work performed in 2018 by Sue Park and which was paid by BLF. Id. at 40.

### C. Travelers' Reply Brief

In its reply brief, Travelers argues that none of RMB's arguments have merit. Travelers argues that there is no basis for finding that all seven causes of action alleged in the Louderbacks' SAC were potentially covered by the Policy and that RMB's arguments rely solely on impermissible legal conclusions of Patrick Bright, RMB's expert. Travelers Reply at 9. Travelers argues that the "wrongful … invasion of the right of private occupancy" provision of the Policy does not provide potential coverage for any allegations in the Lounderbacks' SAC because the SAC does not contain any allegations that RMB invaded the Louderbacks' "right of private occupancy," given that "[a]n

easement is an intangible property interest[,] and the holder of an easement does not have a private right of occupancy in the servient estate." Id. at 10. Moreover, Travelers argues that this provision cannot provide coverage for any part of the Louderbacks' SAC because the SAC alleges that RMB interfered with the Louderbacks' easement; "to the extent that [RMB] … argu[es] that the property interfered with is the Louderbacks' own property," such interference was not "committed by or on behalf of that property's owner, landlord or lessor." Id.

Travelers further argues that there is no merit to RMB's argument that the most effective way to prove that March did not defame John Louderback personally was for RMB to prove Louderback had no easement. Id. at 10. Travelers argues that "proving that the Louderbacks have no easement through Walking U Ranch is a defense to the Louderbacks' cause of action for slander of title (and quiet title), but would not be a defense to a cause of action for defamation of person." Id. Travelers argues that this is so because "whether there was a valid easement does not prove or disprove Ms. March's alleged statement that Mr. Louderback 'stiffs' business partners and 'lies to practically everybody' – i.e., that she defamed Mr. Louderback personally." Id. at 10. Thus, Travelers argues that "[it] has no obligation to pay for attorneys' fees and costs incurred to prove that the Louderbacks did not have an easement. Such attorneys' fees and costs were incurred to defend claims for slander of title and quiet title." Id. at 11.

With respect to RMB's argument that fees paid by Travelers to prepare RMB's cross-complaint in the Underlying Action are not reimbursable, Travelers argues that this argument is without merit because California law does not hold that "every legal fee and cost incurred to 'minimize net damage exposure' or [that] has a 'dual function' … [is] [a] covered defense cost[]" and therefore not reimbursable. Id. at 13.

Travelers argues that there is no merit to RMB's argument that Travelers acted with unclean hands by failing to cite the California Court of Appeal's decision Charlotte Russe because Charlotte Russe is irrelevant to the coverage issues in this case and, moreover, was disapproved by the California Supreme Court in Hartford Cas. Ins. Co. v. Swift Dist., Inc., 59 Cal. 4th 277 (2014). Id. at 14.

Travelers argues that the testimony of its expert Jacqueline Vinaccia is admissible because Vinaccia "is a fee auditing expert that has been qualified to testify at trial on various occasions, including when performing Buss allocations." Id. at 15. Travelers

argues that Vinaccia did not “need … to perform a coverage analysis [because] [t]he Court [had previously] already ruled on [the scope of] coverage.” Id. (citing Dkts. 35, 173, 272). Travelers argues that “Vinaccia’s expertise in legal fee analysis, which includes Buss allocations, qualifies her to evaluate the reasonableness and necessity of defense costs.” Id. Travelers further argues that “[c]overage determinations and equitable reimbursement allocations are separate analyses,” and “[t]his Court can rely on … Vinaccia’s factual findings about which defense activities related to the potential cause of action for defamation of person, while applying its own legal conclusions.” Id. at 16. Moreover, Travelers argues that Vinaccia’s methodology was sound because it “was based on a thorough review of the billing records and litigation documents, pursuant to the Court’s coverage determination in its various orders.” Id. at 16. Travelers also argues that Vinaccia did not “impeach” herself by submitting three separate reports because “[t]he methodology for all three reports is identical”: the first report “was based on the $200 panel rate paid by Travelers”; the second “provided an updated analysis” of fees reimbursable to Travelers based on the section 2860 arbitrator’s determination of attorneys’ fees properly owed to Cumis counsel; and the “third report … merely corrected an accounting error.” Id. at 17.

Travelers also argues that there is no merit to RMB’s arguments that Travelers owes RMB $205,000 for the shortfall in Cumis counsel fees that RMB paid to Cumis counsel in light of the section 2860 arbitrator’s determination that Cumis counsel were entitled to higher rates than the $200 panel rate paid by Travelers. Id. at 17. Travelers argues that this is so because the section 2860 arbitrator did not determine that Travelers is required to compensate RMB for the shortfall in Cumis counsel fees; rather, Travelers argues that the Court must determine whether and what amount RMB is entitled to reimbursement from Travelers after determining the amount that Travelers is entitled to equitable reimbursement from RMB. Id.

Moreover, Travelers argues that it has no obligation to pay for the $19,395 paid by BLF for legal work performed by Sue Park in 2018 because Sue Park performed such work as a contract attorney for BLF before Park Jensen was appointed as RMB’s third Cumis counsel. Id. at 18. Travelers argues that under Trope v. Katz, 11 Cal. 4th 274 (1995) and this Court’s March 10, 2022 order, Dkt. 173, which was affirmed by the Ninth Circuit, Dkt. 196, RMB is not entitled to recover from Travelers the $19,395 paid to Sue Park for work that she performed on behalf of BLF. Id. Moreover, Travelers argues that

because RMB's cross-complaint against Travelers has been dismissed with prejudice, there is no basis for the Court to find that Travelers is obligated to pay Sue Park's fees. Id.

### D. RMB's Sur-reply Brief

In their sur-reply brief, RMB argue that Travelers has failed to establish that it is entitled to equitable reimbursement because its expert Jacqueline Vinaccia failed to perform a proper equitable reimbursement allocation analysis under Buss. RMB Sur-reply at 2. RMB argues that Vinaccia's analysis is necessarily flawed because Vinaccia failed to independently determine which claims and allegations in the Louderback SAC are potentially covered under the Policy and therefore could not determine which fees and costs are properly reimbursable to Travelers. Id. at 3. In other words, RMB argues that Vinaccia's analysis relies on "Travelers' [erroneous] instructions that easement work was NOT covered" under the Policy. Id.

RMB argue that this Court has never held that the only basis for coverage against the allegations in the Louderbacks' SAC is the Policy's "slanders or libels a person" provision. Id. at 4 (citing Dkts. 35, 173, 272). RMB argues that the Court's statements in its previous orders that "[t]he only claim by the Louderbacks that could have potentially been covered by the [P]olicy would have been a defamation claim," Dkts. 173, 272, are erroneous or dicta because the Court never considered and discussed whether other provisions in the Policy—including the "disparages a person's … goods, products or services" provision and the "wrongful … invasion of the right of private occupancy" provision—provide coverage for allegations in the Louderbacks' SAC. Id. at 5. RMB argues that the Court's previous orders in this case, in any event, may be revised and corrected pursuant to Fed. R. Civ. P. 54(b). Id. at 6.

RMB further argue that at no point in the Underlying Action were the Louderbacks precluded from asserting a defamation claim. See id. at 8-9. Although the court in the Underlying Action precluded the admission of evidence of alleged money damages suffered by the Louderbacks,[6] RMB argues that the court's ruling did not preclude the

[6] RMB filed a motion *in limine* on to preclude the Louderbacks from offering any evidence of money damages at trial in the Underlying Action, Exhibit 64, which Judge Rigali sustained. Tr. 12/05/25 at 116-17.

Louderbacks from amending their SAC to assert a slander claim because "slander *per se* does not require proving actual or special damages." Id. at 8-9 (emphasis omitted) (citing cases). RMB argues that, "[i]f RMB had not proven [at trial in the Underlying Action that] everything March said was true, Louderback could have moved, post-trial, to amend [their] SAC to seek damages for slander per se, without [needing to] hav[e] proved actual damages." Id. at 9.

With respect to RMB's request for the $19,395 paid by BLF for legal work performed by Sue Park in 2018, RMB argues that neither this Court's orders nor the Ninth Circuit's April 19, 2023 memorandum decision, Dkt. 196, preclude RMB's request because the Ninth Circuit found only that RMB could not be compensated for work that they performed in representing themselves in the Underlying Action. Id. at 15.

## VI. TRAVELERS' ENTITLEMENT TO REIMBURSEMENT

The Court first discusses its conclusions of law on the issue of which allegations in the Underlying Action are potentially covered by the Policy. The Court then addresses RMB's arguments regarding Travelers' alleged unclean hands that RMB contends precludes Travelers from seeking equitable reimbursement. The Court then discusses which defense fees and costs incurred by Travelers are allocable solely to claims not potentially covered by the Policy and are therefore reimbursable under Buss.

Separately, the Court discusses what amounts, if any, that Travelers is obligated to reimburse RMB on the ground that Travelers underpaid RMB's Cumis counsel at the correct hourly rates decided by the section 2860 arbitrator and which resulted in RMB having to pay for the shortfall to Cumis counsel. The Court also discusses whether RMB is entitled to reimbursement for the $19,395 that BLF paid to Sue Park in 2018.

### A. Allegations in the Underlying Action Potentially Covered by the Policy

The Court has previously determined that: "The only claim by the Louderbacks that could have potentially been covered by the [P]olicy would have been a defamation claim"—that is, a claim that RMB slandered or libeled a person or organization. Dkt. 173 at 31. The Court came to this conclusion after finding that, "although the Louderbacks did not assert claims for defamation, 'a number of allegations[7] [in the

[7] Such allegations are described in the Court's August 6, 2018 order. Dkt. 35 at 11-13.

Louderbacks' SAC] demonstrate potentially defamatory remarks concerning the Louderbacks,' and as such 'reveal potential liability for slander of person for purposes of Coverage B.'" Id. at 30 (quoting Dkt. 35 at 9-13).

The Court, in its previous orders, did not discuss the merits of RMB's arguments that other provisions in the Policy—namely the "disparages a person's … goods, products or services" provision and the "wrongful … invasion of the right of private occupancy" provision—provide coverage for allegations and claims in the Louderbacks' SAC. See generally Dkt. 35, 173, 272. As explained below, because both of RMB's arguments regarding these provisions are without merit, it is not appropriate for the Court, pursuant to Fed. R. Civ. P. 54(b), to revise any of its previous findings regarding scope of coverage under the Policy with respect to the allegations in the Underlying Action. See Ingle v. Cir. City, 408 F.3d 592, 594 (9th Cir. 2005) (holding that "application of the [law of the case] doctrine is discretionary").

The Court finds that the "disparages a person's … goods, products or services" provision does not provide potential coverage for any allegations or claims asserted in the Louderbacks' SAC. This provision provides coverage for claims seeking damages for "[o]ral or written publication … that … disparages a person's or organization's goods, products or services." Primary Policy at TR009598, TR009599. RMB argues that this provision provides coverage for all claims asserted in the Louderbacks' SAC because the SAC alleges that that March had disparaged the Lounderbacks' alleged easement over the Walking U Ranch property when she told people that John Louderback did not have an easement over the Walking U Ranch property, and because an easement is a "good" within the meaning of the provision. The Court disagrees. "An easement is … an incorporeal or intangible property right that does not relate to physical objects but is instead imposed on the servient land to benefit the dominant tenement land." Kazi v. State Farm Fire & Cas. Co., 24 Cal.4th 871, 881 (2001). By contrast, "[d]ictionaries define 'good' as 'something manufactured or produced for sale,' Webster's Collegiate Dictionary 539 (11th ed. 2003), and 'tangible or movable personal property other than money.' Black's Law Dictionary 701 (17th ed. 1999)." ABM Indus., Inc. v. Zurich Am. Ins. Co., 2006 WL 2595944 at 23 (N.D. Cal. Sept. 11, 2006). See also LegalForce RAPC Worldwide, PC v. LegalForce, Inc., 124 F.4th 1122, 1126 (9th Cir. 2024) (a "good" for

purposes of the Lanham Act is a “movable or tangible thing”).[8] Moreover, courts have held that “title to real property is not a good, product, or service,” and therefore, a claim for slander of title is not covered by an insurance provision providing coverage for “disparagement of an organization’s *goods, products, or services*.” Zurich Am. Ins. Co., 2006 WL 2595944 at 26-27 (emphasis in original). See also Nationwide Mut. Ins. Co. v. Lake Caroline, Inc., 515 F.3d 414, 420-21 (5th Cir. 2008) (noting that “courts are *unanimous* in holding that slander of title claims pertain only to real property, which is not a … good, product, or service”) (citing cases). Thus, by analogy, the Court finds that the term “good” in the “disparages a person’s … goods, products or services” provision does not cover or potentially cover an easement.

RMB’s citation to Charlotte Russe does not affect the Court’s conclusion. See Travelers Prop. Cas. Co. of Am. v. Charlotte Russe Holding, Inc., 207 Cal. App. 4th 969, 972 (2012), disapproved of by Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal. 4th 277 (2014). Charlotte Russe involved the following facts:

> An apparel manufacturer, People’s Liberation, filed an action for fraud, breach of contract, and restitution against a clothing store, Charlotte Russe, which it had enlisted to be the exclusive retailer of the brand. The complaint alleged that Charlotte Russe’s heavy discounts on its premium apparel suggested to consumers that People’s Liberation products were of inferior quality. The court rejected the insurer’s contention that coverage was defeated because the underlying pleadings did not allege an injurious false statement disparaging [the manufacturer’s] products. … The court found sufficient the allegations that the People’s Liberation brand was a premium good and that Charlotte Russe had “published prices” that implied they were not, thereby reasoning that the underlying complaint “pled that the implication carried by the Charlotte Russe parties’ pricing was false.”

Swift Distribution, Inc., 59 Cal. 4th at 295 (cleaned up). RMB argues that because the insurance policy at issue in Charlotte Russe is the same Policy at issue in this case, Charlotte Russe establishes that courts should adopt an “expansive interpretation” of the term “goods” in this Policy to encompass an easement. The Court disagrees. Charlotte

[8] But see Goods, Black’s Law Dictionary (12th ed. 2024) (providing a second definition of “goods” as “Things that have value, whether tangible or not.”).

Russe involved a factual scenario of little to no relevance to this case: Charlotte Russe involved tangible goods—premium apparel—that were allegedly disparaged when a clothing store placed heavy discounts on the apparel; here however, the "good" at issue is an intangible easement that was allegedly disparaged when Kathleen March told people that the Louderbacks did not possess the road easement. Thus, Charlotte Russe does not support the position that the term "goods" in the Policy may be construed to include easements, an intangible property right. Moreover, whatever "expansive interpretation" of the term "goods" that the Charlotte Russe court adopted, such interpretation was subsequently disapproved of by the California Supreme Court. Swift Distribution, Inc., 59 Cal. 4th at 295 (holding, contrary to Charlotte Russe, that "[r]educing the price of goods, without more, cannot constitute a disparagement").

RMB's citation to Atlantic Mutual Ins. Co. v. J. Lamb, Inc., 100 Cal. App. 4th 1017 (2002), which is discussed in Charlotte Russe, is likewise unpersuasive.

> In [Atlantic Mutual], the policy provided coverage for the insured's publication of material "'that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.... '" … The insured [J. Lamb, Inc.] sought coverage for underlying litigation that alleged it had falsely stated to the plaintiff's [Continental Quilting Company, Inc.] customers that the plaintiff's products were burdened with patents, and that their purchase of those products would subject them to litigation. … The question therefore was whether the underlying litigation's allegations amounted to claims that the insured had published "matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general"; if so, it "disparaged" the product.

Charlotte Russe, 207 Cal. App. 4th at 972. Atlantic Mutual is of little relevance to this case because the "good" or "product" at issue in that case did not involve intangible easements; it involved a tangible "good" that was sold to customers and allegedly protected by the insured's patent. Atlantic Mutual, 100 Cal. App. 4th at 1024. Accordingly, the "disparages a person's … goods, products or services" provision of the Policy does not provide potential coverage for any aspect of the Louderback SAC.

Nor does the "wrongful … invasion of the right of private occupancy" provision impose a duty on Travelers to defend RMB against any allegation in the Louderback SAC. This provision provides coverage for claims seeking damages for injury caused by

"[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling, or premises." Primary Policy at TR009599. However, the Louderback SAC does not contain any allegation that RMB wrongfully evicted, wrongfully entered, or invaded the "the right of private occupancy of a room dwelling or premises that [the Louderbacks] occup[y]." Id. Rather, the SAC alleges that RMB locked the gates to the Walking U Ranch property and wrongfully prevented the Louderbacks from accessing their alleged easement over the Walking U Ranch property. Such allegations are not covered under the "invasion of the right of private occupancy" provision of the Policy, which under California law covers only alleged interferences with possessory interests in property. Evergrow Indus. Co. v. Travelers Ins. Co., 37 F. App'x 300, 301–02 (9th Cir. 2002) ("Under California law, the clause 'invasion of the right of private occupancy' requires interference with an enforceable possessory interest in real property and not just an interference with the use or enjoyment of real property. … However, [the insured] could not have interfered with the … possessory interest [of plaintiff in the underlying action], because 'an easement is a nonpossessory interest in the land of another that gives its owner the right to use the land of another.'") (citing cases). See also Camp Richardson Resort, Inc. v. Philadelphia Indem. Ins. Co., 150 F. Supp. 3d 1186, 1194 (E.D. Cal. 2015) ("[A]n interference with an easement does not amount to an invasion of the third-parties' 'right to private occupancy,' under Coverage B."). Thus, this provision does not provide potential coverage for allegations in the Louderback SAC.

In accordance with the foregoing, the Court finds, as it has previously found, that the only claim that the Louderbacks could have asserted against RMB in the Underlying Action that would have been covered or potentially covered by the Policy was a defamation claim. See Dkt. 173 at 31.

**B. Unclean Hands**

RMB argues that Travelers is precluded from obtaining equitable reimbursement under the doctrine of "unclean hands" because: (1) Travelers' counsel concealed the Charlotte Russe from this Court; and (2) Travelers knowingly breached its contract with RMB by knowingly underpaying RMB's Cumis counsel at the correct hourly rates

decided by the section 2860 arbitrator, resulting in a $205,000 shortfall that RMB paid to Cumis counsel. RMB Brief at 34-35, 38-39. Neither argument has merit.

First, as discussed above, Charlotte Russe is of little to no relevance to this case; thus, Charlotte Russe cannot be directly adverse to Travelers’ position in this case. Accordingly, that Travelers’ counsel did not bring Charlotte Russe to the Court’s attention does not constitute any ethical violation and cannot establish that Travelers has unclean hands. See Cal. R. Prof. Conduct 3.3(a)(2) (a lawyer shall not “fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be *directly adverse* to the position of the client and not disclosed by opposing counsel, ….”) (emphasis added).

Second, there is no merit to RMB’s contention that Travelers acted with unclean hands by underpaying RMB’s Cumis counsel. Travelers reserved the right to dispute the correct rates for Cumis counsel in section 2860 arbitration. Exhibit 4 at 3. Although the section 2860 arbitrator subsequently found on July 30, 2025 that RMB’s Cumis counsel were entitled to higher hourly rates than Travelers had agreed to pay and in fact paid,[9] this fact alone does not establish that Travelers acted with unclean hands because the arbitrator’s decision did not order or compel Travelers to pay RMB anything. See Dkt. 283 at 2 (“In an arbitration held under Section 2860, the only issue before the arbitrator is the appropriate hourly rate for Cumis counsel. The arbitrator cannot consider any other disputes arising from the amounts paid by an insurance carrier to Cumis counsel for the defense of an underlying action.”) (emphases omitted).

Accordingly, the Court finds that because Travelers has not engaged in any misconduct, the doctrine of “unclean hands” does not preclude Travelers from seeking equitable reimbursement from RMB. See Aardwolf Indus., LLC v. Abaco Machines

---

[9] Travelers agreed to pay and paid Cumis counsel at the rate of $200 per hour; however, the section 2860 arbitrator, Craig S. Meredith, on July 30, 2025, “f[ound] that Travelers has failed to meet its burden of proof under Section 2860 that would allow it to limit the hourly rates of Cumis counsel to panel rates and accordingly [found that] the appropriate hourly rates are those actually charged by independent counsel, as follows: Ogden & Fricks, LLP: $340/hour for partners, $275/hour for associates Proctor, Shyer & Winters, LLP: $350/hour for partners, $150/hour for associates Park & Jensen, LLP: $300/hour for partners.” Dkt. 283 at 11.

USA, Inc., No. CV 16-1968-GW(JEMX), 2017 WL 10350547, at *15 (C.D. Cal. Nov. 13, 2017) (“The doctrine of unclean hands requires unconscionable, bad faith, or inequitable conduct by the plaintiff in connection with the matter in controversy.”) (citing cases).

In determining what amount of reimbursement Travelers is entitled to, if any, the Court will incorporate the arbitrator’s finding that Travelers underpaid RMB’s Cumis counsel, see Dkt. 283 at 11, and which required RMB to foot the bill for the shortfall.

### C. Defense Fees and Costs Allocable Solely to Non-covered Claims

Under the California Supreme Court’s holding in Buss v. Superior Court, “the insurer [may] obtain reimbursement from the insured … specific [d]efense costs that can be allocated *solely* to the claims that are not even potentially covered.” 16 Cal. 4th at 52 (emphasis added). An insurer has “no right to be reimbursed for costs jointly allocable to claims that were actually or potentially covered under the policy because it would have had to expend such costs in any event.” Croskey et al., Cal. Practice Guide: Insurance Litigation, § 7:758 (citing Buss, 16 Cal. 4th at 52-53) (emphasis omitted). “As to the claims that are not even potentially covered, however, the insurer may indeed seek reimbursement for defense costs.” Buss, 16 Cal. 4th at 50. “[I]n a ‘mixed’ action, in which some of the claims are at least potentially covered and the others are not … the insurer may not seek reimbursement for defense costs” for “[a]s to claims that are at least potentially covered.” Buss, 16 Cal. 4th at 47-49.

Pursuant to Buss, the Court proceeds to determine which defense fees and costs can be allocated solely to claims that are not even potentially covered. In other words, the Court must determine which defense costs cannot be allocated in any part to a claim for defamation. Such defense costs would be reimbursable to Travelers. By contrast, reasonable defense fees and costs expended to prove what March and RMB said about John Louderback and the Louderbacks were true and therefore not defamatory, are not reimbursable. See dkt. 272 at 12 (“The Court finds that monies paid, which Travelers claims ‘can be allocated solely to the claims that are not even potentially covered,’ would be reimbursable unless it is correct that the potential of the defamation claim being added gave rise to expending fees to prove what was said about Louderback was true.”).

The Court has reviewed the operative Louderback SAC and finds that the SAC makes three principal allegations[10] that could form the basis for a defamation claim against one or more members of RMB: (1) March made the statement that “[John] Louderback lies to practically everybody,” Louderback SAC ¶ 250; (2) March made the statement that “[John] Louderback stiffs everybody that tries to do business with him,” id.; and (3) “[RMB] have falsely represented that [the Louderbacks] do not have an access road easement, created and disseminated a false narrative that an alternative legal road exists, and denied access to the access road easement,” Id. ¶ 475, *thereby falsely implying that John Louderback had lied about possessing an easement*. See also id. ¶ 249 (“Kathleen P. March stated to David Goller that … ‘Louderback claims he has an easement to cross my ranch, but when I asked his lawyer for it twice in writing, he didn’t give it to me. So I don’t think he has an easement at all.’”). Moreover, the SAC alleges that “[a]s a result of [RMB’s] publications, [the Louderbacks] have suffered damage, including an inability to hire contractors ….” Id. ¶ 481.

“Defamation is an invasion of the interest in reputation.” Smith v. Maldonado, 72 Cal. App. 4th 637, 645 (1999). To state a claim for defamation under California law, plaintiff must allege “(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.” J-M Mfg. Co. v. Phillips & Cohen LLP, 247 Cal. App. 4th 87, 97 (2016) (citing Taus v. Loftus, 40 Cal. 4th 683, 720 (2007); Wong v. Jing, 189 Cal. App. 4th 1354, 1369 (2010)). The SAC’s allegations that March told David Goller that “[John] Louderback lies to practically everybody,” Louderback SAC ¶ 250, and that March told David Goller that “[John] Louderback stiffs everybody that tries to do business with him,” id., support a potential claim for slander, a type of defamation. These alleged statements by March constitute a “false and unprivileged publication, orally uttered, … which: … by natural consequence, causes actual damage.” Cal. Civ. Code § 46 (defining slander). See also Barnett v. Fireman’s Fund Ins. Co, 90 Cal. App. 4th 500, 511 n.5 (noting that allegations concerning defamation “need not specially allege the statements were false[,]” and concluding that because “the underlying complaint alleged publication to third persons,

[10] The Court notes that the Louderbacks’ original complaint and First Amended Complaint, filed on December 11, 2017 and March 13, 2018, respectively, contain the same three allegations that could form the basis for a defamation claim. See Dkt. 20-5 ¶¶ 142, 260; Dkt. 20-8 ¶¶ 250, 443.

and the content of the statements were allegedly disparaging[,] [t]hese allegations sufficed to give rise to a potentially covered claim” for defamation). It follows that defense fees and costs expended to reasonably defend against these allegations are not reimbursable to Travelers because they are potentially covered under the Policy. For example, fees and costs allocable to work done to prove the truth of March’s alleged statements—that John Louderback does in fact “lie to everybody” and that John Louderback in fact “stiffs everybody that tries to do business with him”—are not reimbursable.

Likewise, the SAC’s allegation that, “[RMB] … fraudulent[ly] [and] … falsely represented that Plaintiffs do not have an access road easement, created and disseminated a false narrative that an alternative legal road exists, and denied access to the access road easement,” Louderback SAC ¶ 475, *independently* supports a potential claim for defamation because, considered alongside other allegations in the SAC, it alleges that RMB disparaged the Louderbacks’ *reputation*. The SAC elsewhere alleges that “Kathleen P. March stated to David Goller that … ‘Louderback claims he has an easement to cross my ranch, but when I asked his lawyer for it twice in writing, he didn’t give it to me. So I don’t think he has an easement at all.’” Id. ¶ 249. Given this allegation, the claim that March knowingly and falsely represented to a third party that the Louderbacks did not in fact possess an easement (that they claimed to possess) disparages the Louderbacks’ personal reputation by suggesting that the Louderbacks lied about possessing the easement at issue. See Huitron v. U.S. Foods, Inc., No. CV 14-05482 MMM PLAX, 2014 WL 4215656, at *4 (C.D. Cal. Aug. 25, 2014) (“Under California law, it is well settled that ‘[c]alling someone a liar can convey a factual imputation of specific dishonest conduct capable of being proved false, and may be actionable depending on the tenor and context of the statement.’”) (citing cases). In other words, the SAC’s allegation that March told a third party that the Louderbacks did not have an easement goes beyond a claim that March disparaged Louderbacks’ alleged property interest in Louderbacks’ alleged easement; rather the allegation can be reasonably construed to claim that March had disparaged the Louderbacks’ personal reputation—their character for truthfulness—by accusing John Louderback of lying about the Lounderbacks’ entitlement to an easement that in fact did not exist. See Truck Ins. Exch. v. Bennett, 53 Cal. App. 4th 75, 84 (1997) (“Disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes pecuniary loss. … Defamation, by contrast, *injures a person’s*

*reputation*. Rather than interfering with a property right, economic relations, or the sale of goods, defamation invades the interest in personal or professional reputation and good name.”) (emphasis added).

It follows that defense fees and costs expended to reasonably defend against the allegation that “[RMB] … fraudulent[ly] [and] … falsely represented that Plaintiffs do not have an access road easement,” are not reimbursable to Travelers. Specifically, the Court finds that fees and costs allocable to work done to prove the truth of March’s alleged statement—work done to prove that the Louderbacks in fact did not possess an easement—are not reimbursable to Travelers because disproving such easement is a reasonable strategy to defend against a potential claim for defamation predicated on the allegation that, by falsely representing that the Louderbacks have no easement, RMB disparaged John Louderback personally by accusing him of being a liar and having lied about possessing such easement.

Although the Louderbacks never amended their SAC at any point to state a claim for defamation, because their operative SAC alleged the above facts that could potentially support a claim for defamation, the Court previously found that Travelers had a duty to defend RMB against such allegations that could give rise to a claim for defamation. See dkt. 35 at 10-11 (explaining that, under California law, “remote facts buried within causes of action that may potentially give rise to coverage are sufficient to invoke the defense duty.”) (citing Pension Trust Fund for Operating Engineers v. Federal Ins. Co., 307 F.3d 944, 951 (9th Cir. 2002)). See also Barnett v. Fireman’s Fund Ins. Co, 90 Cal. App. 4th 500 (2001) (noting that “the duty to defend arises when the facts alleged in the underlying complaint give rise to a potentially covered claim regardless of the technical legal cause of action pleaded by the third party”). But see Hurley Constr. Co. v. State Farm Fire & Cas. Co., 10 Cal. App. 4th 533, 538 (1992) (“[T]he insured may not speculate about unpled third party claims to manufacture coverage.”).

The Court now finds that, because Travelers had a duty to defend RMB against such allegations that could give rise to a claim for defamation, Travelers has no right to be reimbursed for defense fees and costs that are allocable to the defense of such allegations. See Buss, 16 Cal. 4th at 49-50 (explaining that the “reason” that “the insurer may not seek reimbursement for defense costs” “[a]s to the claims that are at least potentially covered” is because “the insurer has a duty to defend the insured as to the

claims that are at least potentially covered" and "has been paid premiums by the insured" "[w]ith regard to defense costs for these claims"). Moreover, Travelers had a contractual obligation to defend RMB against such allegations—and cannot be reimbursed for fees and costs allocable to such defense—until it was no longer possible for the Louderbacks to amend their complaint to assert a claim for defamation, the only claim covered under the Policy. See Montrose Chemical Corp. v. Superior Ct., 6 Cal.4th 287, 299-300 (1993) ("[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." … "[T]he insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage.") (emphases omitted). See also Croskey, Heesman & Imre, Cal. Practice Guide: Insurance Litig. ¶ 7:666 (Rutter Group 2020) ("A successful challenge to the only claim on which there is coverage will mean there is no further duty to defend and will force the insured to pay future defense costs on the remaining claims."); Lumbermens Mut. Cas. Co. v. Corning, Inc., No. CV0700881DOCMLGX, 2008 WL 11337841, at *17 (C.D. Cal. Dec. 24, 2008) ("[P]artial judgment as to all covered claims is one of the few circumstances justifying the insurer's withdrawal of its defense. … [T]he potential for appeal does not change this result. Instead, the insurer should only be required to reinstate its defense once an appeal actually takes place as to the covered claims.") (citing 1 Allan D. Windt, Insurance Claims & Disputes: Representation of Insurance Companies & Insureds § 4:28 (5th ed. 2008)).

Thus, to determine the amount reimbursable to Travelers, the Court must determine: (a) the total defense costs reasonably allocable to defending against a potential defamation claim based on facts alleged in the Louderback SAC; and (b) defense costs which were expended within the time that the Louderbacks could have potentially amended their complaint to state a defamation claim. The first issue requires the Court to review the evidence regarding Cumis counsel's work in the Underlying Action, including billing records and task descriptions. The second issue requires the Court to make a legal conclusion as to when the Louderbacks could no longer amend their complaint to state a defamation claim.

1. Defense Costs Reasonably Allocable to a Potential Defamation Claim

As discussed, defense fees and costs allocable to work done to prove the truth of March's alleged statements—work done to prove that John Louderback does in fact "lie to everybody" and that John Louderback in fact "stiffs everybody that tries to do business with him"—are not reimbursable to Travelers. Similarly, defense fees and costs allocable to work done to prove the truth of March's allegedly false and disparaging statement—work done to prove that the Louderbacks in fact did not possess an easement—are not reimbursable to Travelers because disproving such easement is a reasonable strategy to defend against a potential claim for defamation predicated on the allegation that, by falsely representing that the Louderbacks have no easement, RMB disparaged John Louderback personally by accusing him having lied about possessing such easement. Below, the Court addresses two specific arguments made by Travelers to clarify the Court's conclusions as to which defense costs are and are not reimbursable.

First, the Court addresses Travelers' argument that "there is no evidence of work performed by Cumis counsel [that may be allocated] towards [defending against an] unpled defamation … claim" because defending against a potential claim for "defamation was not in anyone's mindset at any time" in the Underlying Action. See Travelers Brief at 28, 34. Travelers is correct that, at trial in this case, all but one of RMB's Cumis counsel testified that they did not engage in any of the work for the purpose of defending RMB against a claim or potential claim for defamation. See id. at 14-15 (citing trial testimony of RMB's first and second Cumis counsel Roy Ogden and James Procter). Likewise, counsel for the Louderbacks in the Underlying Action, John Sutton, testified that he did not consider the Underlying Action to be a defamation of person case; that none of discovery was aimed at defamation of person; that he did not take any steps towards proving defamation of person; and that the Louderbacks never sought damages on account of defamation of person, which was not an issue at trial. Id. at 14 (citing John Sutton's trial testimony). Only RMB's third Cumis counsel—Anton Jensen and Sue Park—testified that the work they engaged in to prove that the Louderbacks did not have an easement served the purpose of defending against a potential claim for defamation that could have been added by the Louderbacks by way of amendment. See Tr. 12/3/25 at 84-97; Tr. 12/2/25 at 199-200. In response, Travelers argues that Jensen's testimony regarding this dual purpose of disproving Louderbacks' alleged easement is

"incredulous" and "was conjured up" for the purposes of assisting RMB in their instant dispute with Travelers. Travelers Brief at 34; Travelers Reply at 6.

However, the Court need not ascertain the intentions or motivations of Cumis counsel behind their engagement in specific defense work because such intentions are not dispositive of the issue before the Court: the issue of which of RMB's defense fees and costs are allocable to a reasonable defense against a potential defamation claim. See Buss, 16 Cal. 4th at 49. The Buss decision does not once discuss counsel's subjective intent in determining whether defense costs and fees may be allocated to potentially covered claims. Rather, Buss holds that the determination of which costs are reimbursable to the insurer turns on an assessment of the "hypothetical insured's objectively reasonable expectations." Id. at 35. This view is consistent with Aerojet-Gen. Corp. v. Transp. Indem. Co., in which the California Supreme Court held that the issue of whether certain expenses incurred by the insured—in that case, expenses related to a site investigation—"are defense costs that the insurer must incur in fulfilling its duty to defend must be determined objectively, and not subjectively from the viewpoint of either the insurer or the insured." 17 Cal. 4th 38, 62 (1997).[11] Specifically, the Aerojet court found that "[w]hether the insured's site investigation amounts to a reasonable and necessary effort to avoid or at least minimize liability must … be assessed under an objective standard"; and "whether the insured's site investigation expenses are reasonable and necessary to avoid or at least minimize liability must be assessed under an objective standard as well." Id. at 61-63. In other words, the court must determine, respectively, "whether the site investigation would be conducted against liability by a reasonable insured under the same circumstances" and "whether the site investigation expenses would be incurred against liability by a reasonable insured under the same circumstances." Id. at 62-63. The Aerojet court further held that "[i]n the general case [absent the insurer's breach of its duty to defend], it is the insured that must carry the burden of proof on the existence, amount, and reasonableness and necessity of the site

[11] In Aerojet, Aerojet had discharged hazardous substances, causing property damage to its own and adjacent property. Aerojet was sued by numerous entities, including the State of California and the United States, and thereafter spent approximately $26 million in "site investigation expenses" to investigate the extent of the contamination, the viability of cleanup options and to monitor the spread of waste from the site. See 17 Cal. 4th 38, 46-52.

investigation expenses as defense costs, and it must do so by the preponderance of the evidence," because the insured Aerojet was seeking reimbursement for expenses incurred in relation to the site investigation at issue. Id. at 64. However, the Aerojet court reaffirmed the Buss court's holding with respect to the burden of proof in insurer reimbursement actions: "On the allocation of defenses costs to the insured, it is the insurer that must carry the burden of proof, and it must do so by the preponderance of the evidence." Id. at 69 (citing Buss, 16 Cal. 4th at 53). This is so because "generally, a party desiring relief must carry the burden of proof thereon." Id. (citing Cal. Evid. Code § 500).

The Court finds that the "objective standard" from Aerojet applies here to determine the reasonableness of Cumis counsel's defense efforts in defending RMB against a potential defamation claim. For example, whether it was reasonable for Cumis counsel to defend against a potential defamation claim by relying on the defense strategy of disproving the existence of Louderbacks' easement (and by proving the truth of March's alleged statements that John Louderback does in fact "lie to everybody" and "stiffs everybody that tries to do business with him") must be assessed under an objective standard. See Aerojet, 17 Cal. 4th at 62. As the Court has indicated, the Court finds that such strategy of proving the truth of an allegedly defamatory statement "amounts to a reasonable and necessary effort to avoid or at least minimize liability" against a potential defamation claim. See id. That is, such defense efforts "would be conducted against liability by a reasonable insured under the same circumstances." Id.

Similarly, the issue of whether the defense costs incurred by Cumis counsel in furtherance of the above defense strategy "are reasonable and necessary to avoid or at least minimize liability must be assessed under an objective standard as well." Id. at 61-63. To make such determinations, the Court must review the evidence as to what work was actually done by Cumis counsel—the Court must review the work product of Cumis counsel in the Underlying Action and Cumis counsel's billing records and task descriptions that are in the record. The Court addresses such evidence in a later section of this order.

Second, the Court addresses Travelers' following argument:

> Even if the Court were to find that disproving an easement … helped defend against an unpled cause of action for defamation of person … it still does not mean

> that ‘all’ easement related work served a dual purpose. For instance, work performed defending against the four common law easements could not serve a dual purpose [because] [t]he statements made by Ms. March … that the Louderbacks did not have an easement … have to do with the Louderbacks’ claim of an express easement. Ms. March’s comments could not be about a common law easement that the Louderbacks were seeking ***prospectively*** as an alternative form of relief. It was about the fact the Louderbacks did not have an easement at that time – an express easement.

Travelers Brief at 32-33 (emphasis in original).

The Court is not persuaded by Travelers’ argument. The SAC alleges that “[a]s part of a false narrative and without any reasonable basis, [RMB] have falsely claimed that there is [an]other legal access road over the Spanish Ranch to the 793 acres, but there is no such other legal access road to the 793 acres over the Spanish Ranch.” Louderback SAC ¶ 76. The SAC alleges that “[RMB] invented the false narrative about a ‘deeded easement’ and falsely attributed that phrase to plaintiff John R. Louderback.” Id. ¶ 383. Importantly, the SAC further alleges that “March has made false statements to Jake Furstenfeld stating that [the Louderbacks] do not have an access road easement over the Walking U Ranch property for access to and from the 793 acres,” and that “March has made false statements to deputies of the Santa Barbara County Sheriff’s Department. These include that she had no knowledge of *any* easement benefitting the 793 acres ….” Id. ¶¶ 443-44 (emphasis added).[12] The Court construes these allegations in the SAC (and in earlier complaints) to allege that RMB published false statements that the Louderbacks had lied in claiming that they held *any* type of easement over the Walking U Ranch property, express or otherwise. In other words, the alleged facts contained in the SAC could potentially state a claim for defamation by alleging that, by falsely telling third parties that the Louderbacks had lied about their entitlement to any type of easement, RMB had disparaged the Louderbacks’ personal reputation for honesty. To defend RMB against a potential defamation claim, the Court finds that it was objectively reasonable for Cumis counsel to engage in work to prove the truth of RMB’s alleged statements—that

[12] The SAC further alleges that RMB knowingly published their false statements to others. Id. ¶¶ 448-453.

the Louderbacks in fact did not hold *any* type of easement, express or otherwise. Costs allocable to such work would not be reimbursable to Travelers.

In conclusion, the Court finds that objectively reasonable defense fees and costs allocable to work done to prove that John Louderback does in fact “lie to everybody”; that John Louderback in fact “stiffs everybody that tries to do business with him”; and that the Louderbacks in fact did not possess any easement whatsoever over the Walking U Ranch property, are *not* reimbursable to Travelers.

*a. Defense costs which were expended within the time that the Louderbacks could potentially have amended their complaint to state a defamation claim*

The Court now discusses potential temporal limitations on Travelers’ duty to defend, which is relevant to the issue of which fees are reimbursable to Travelers.

California Code of Civil Procedure § 473(a)(1) authorizes the court to allow a party to amend a pleading “in furtherance of justice, and on any terms as may be proper.” Cal. Civ. Proc. Code § 473. Moreover, Cal. Civ. Proc. Code § 576 provides: “Any judge, at any time before or *after commencement of trial*, in the furtherance of justice, and upon such terms as may be proper, may allow the amendment of any pleading or pretrial conference order.” Cal. Civ. Proc. Code § 576 (emphasis added). However, “even if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial.” P&D Consultants, Inc. v. City of Carlsbad, 190 Cal. App. 4th 1332, 1345 (2010) (internal quotations omitted).

Given California’s “strong policy in favor of liberal allowance of amendments” to pleadings, Berman v. Bromberg, 56 Cal. App. 4th 936, 945 (1997), the Court finds that the Louderbacks could have potentially amended their complaint to state a claim for defamation even past the commencement of trial in the Underlying Action. It would not have been an abuse of discretion for the trial court to have granted the Louderbacks leave to add a claim for defamation during trial because the Louderbacks could have relied on the existing allegations in the SAC to state a defamation claim; accordingly, the work that RMB’s counsel undertook to disprove the existence of Louderbacks’ claimed easement—to defend against the seven causes of action in the SAC—would also serve to defend against a potential defamation claim predicated on March’s statement that the

Louderbacks lied about having an easement. Thus, late amendment to add a defamation claim that conforms to the evidence presented at trial would not have been prejudicial to RMB. See Cal. Civ. Code §§ 469, 470 (permitting the court to allow amendments to pleadings to conform to proof "[w]here the variance is not material" and stating that "[n]o variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits."); McMillin v. Eare, 70 Cal. App. 5th 893, 910 (2021), as modified (Feb. 23, 2022) ("If *new* facts are being alleged, prejudice may easily result because of the inability of the other party to investigate the validity of the factual allegations while engaged in trial or to call rebuttal witnesses. *If the same set of facts supports merely a different theory [then] no prejudice can result*.") (emphases added); Garcia v. Roberts, 173 Cal. App. 4th 900, 909 (2009) ("[A]mendments at trial to conform to proof, 'if not prejudicial, are favored since their purpose is to do justice and avoid further useless litigation.'"); Trafton v. Youngblood, 69 Cal. 2d 17, 31 (1968) ("[T]he allowance of amendments to conform to the proof rests largely in the discretion of the trial court and its determination will not be disturbed on appeal unless it clearly appears that such discretion has been abused. Such amendments have been allowed with great liberality 'and no abuse of discretion is shown unless by permitting the amendment new and substantially different issues are introduced in the case or the rights of the adverse party [would be] prejudiced.'" Conversely, "amendments of pleadings to conform to the proofs should not be allowed when they raise new issues not included in the original pleadings and upon which the adverse party had no opportunity to defend.") (cleaned up).

However, the Court finds that, after the trial court in the Underlying Action issued its statement of decision on May 17, 2021 adjudicating the parties' claims, the Louderbacks could no longer have amended their complaint to state a claim for defamation. This is so because an amendment of pleadings to add any claim for defamation after the Court's May 17, 2021 statement of decision would have been either

///

///

///

///

futile[13] or prejudiced RMB's ability to effectively defend against such claim.[14] See Issa v. Alzammar, 38 Cal. App. 4th Supp. 1, 4 (1995) ("'Once judgment has been rendered, amendment of a pleading is only possible if the judgment is first vacated.' … In view of the fact that the superior court judgment was never ordered vacated, the amendment of the complaint was improper and must be reversed.") (citing 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1135, p. 550).

Accordingly, from the date that RMB tendered its defense to Travelers on December 19, 2017,[15] to May 17, 2021, the date that the Louderbacks could no longer conceivably amend their complaint to add a defamation claim against RMB, all objectively reasonable defense fees and costs allocable to defending against a potential claim for defamation are not reimbursable to Travelers. See Foster-Gardner, Inc. v. Nat'l Union Fire Ins. Co., 18 Cal. 4th 857, 886 (1998) ("The duty to defend arises when the insured tenders defense of the third party lawsuit to the insurer.") (quoting 2 Croskey et al., Cal. Practice Guide: Insurance Litigation, ¶ 7:604).

Travelers is incorrect in arguing that its duty to defend RMB ended as of the date that Judge Rigali granted RMB's motion *in limine* to preclude the Louderbacks from offering any evidence of money damages at the time of the Louderback trial. Travelers Brief at 19. Although the granting of such motion presumably precluded the

---

[13] An amendment to add a defamation claim past May 17, 2021 would have been futile to the extent that the claim would have been predicated on March's statement that the Louderbacks lied about having an easement because the trial court judge on that date found that the Louderbacks did not have any easement as a matter of law. Exhibit 17.

[14] An amendment to add a defamation claim past May 17, 2021 would have been prejudicial to RMB to the extent that such claim would have been predicated on March's alleged statements that "[John] Louderback lies to practically everybody," Louderback SAC ¶ 250, and that "[John] Louderback stiffs everybody that tries to do business with him," id., because RMB would have had no opportunity to present evidence at trial to defend against such allegations.

[15] By this date, the Louderbacks' then-operative original complaint, filed on December 11, 2017, already contained the three principal allegations that could support a claim for defamation; accordingly, Travelers had a duty to as soon as RMB tendered its defense to Travelers on Decmeber 19, 2017. See Dkt. 20-5 ¶¶ 142, 260.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

Louderbacks from presenting evidence of damages at trial, and although one of the typical elements of defamation of is damages, "[u]nder California law, defamation per se does not require proof of actual damages but instead presumes that the plaintiff has suffered such damages." Clark v. Hidden Valley Lake Ass'n, No. 16-CV-02009-SI, 2018 WL 3069285, at *6 (N.D. Cal. Apr. 18, 2018); see also 6 Witkin, Summary of Cal. Law § 1884 (2017) ("Where a libel or slander is actionable per se ..., general damages are recoverable for the injury of the reputation of the plaintiff. … [I]t is not necessary to trace any particular effect on that reputation, for the presumption is that it was substantially harmed, and the jury may award compensatory damages."). Slander per se, which is actionable without proof of special damages, includes "a false and unprivileged publication" which "[t]ends directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits." Cal. Civ. Code § 46. Here, *each* of the Louderbacks' three principal allegations relating to a potential claim for slander—that March told a third party that "[John] Louderback stiffs everybody that tries to do business with him" and "lies to practically everybody," and that March at least suggested that Louderback lied about having an easement—could support a claim for slander per se because each allegation could tend to injure John Louderback "in respect to his office, profession, trade or business, … by imputing to him general disqualification in those respects." Cal. Civ. Code § 46. This is so because these alleged claims by March potentially disparage John Louderback, an alleged real estate developer, SAC ¶ 13, as being untrustworthy in his real estate business dealings and with respect to asserting his interests in real property (i.e., the easement), an important subject of his real estate profession. See Duste v. Chevron Prods. Co., 738 F. Supp. 2d 1027, 1044 (N.D. Cal. 2010) (denying summary judgment on defendant's motion for summary judgment on plaintiff's slander per se claim because "the substance of the statement is sufficient to create a triable issue of fact as to whether it was such that it injured [plaintiff] in respect to his profession and trade, which is sufficient to establish slander per se under section 46(3) and does not require proof of actual damages."). Accordingly, regardless of whether the Louderbacks could present evidence of damages at trial in the Underlying Action, Travelers had a duty to defend RMB against a potential claim for slander per se until May 17, 2021, the date that

the Louderbacks could no longer conceivably amend their complaint to add a defamation claim against RMB.[16]

Having concluded that certain defense fees and costs are allocable to a potential claim for defamation—and therefore not reimbursable to Travelers—the Court proceeds to discuss the evidence of defense fees and costs incurred by Cumis counsel in the Underlying Action.

2. Evidence of Defense Fees and Costs Allocable Solely to Non-covered Claims

The record mostly contains two types of evidence that are relevant to resolution of Travelers’ equitable reimbursement claim: 1) documents from the Underlying Action, including pleadings, deposition transcripts, motions, and judicial decisions; and 2) billing statements and task descriptions of Cumis counsel.

As an initial matter, the Court finds that it may not rely on the ultimate conclusions of Jacqueline Vinaccia, Travelers’ attorney fee auditing expert, for the simple reason that Vinaccia’s opinions are predicated on an incorrect assumption as to which allegations in the Underlying Action could potentially support a claim for defamation; thus, her opinions regarding the defense fees and costs that are allocable solely to non-covered claims (that is, allegations that are unrelated to a potential defamation claim), are necessarily flawed. Vinaccia’s reports and opinions are predicated on two incorrect assumptions: 1) that the allegations that RMB had falsely stated that the Louderbacks had lied about possessing an easement could not support a potential claim for defamation; and 2) that because none of the pleadings, motions, or judicial orders in the Underlying Actions specifically discuss the issue of defamation or slander of person, that the costs in preparing and responding to such filings are reimbursable to Travelers. See dkt. 290-2 (Declaration of Jacqueline S. Vinaccia), Exhibit 1 (Vinaccia Expert Report) at 22-23 (stating Vinaccia’s conclusion that because “the Underlying Complaint was never amended to include a cause of action against Walking U Ranch for slander or

[16] Neither party appears to dispute that the May 17, 2021 statement of decision—as opposed to the December 22, 2021 judgment flowing from that statement of decision—appropriately marks the date on which the Louderbacks could no longer conceivably amend their complaint to add a defamation claim against RMB.

defamation" and because "[n]one of the pleading challenges, motions for summary judgment, or claims at trial included litigation of potential slander claims," "[t]herefore, all the fees and costs incurred in these categories are subject to reimbursement by the insureds to Travelers."). These incorrect assumptions preclude Vinaccia from offering an accurate assessment of the amount of fees and costs reimbursable to Travelers. For example, Vinaccia concludes that certain types of work that she categorizes as "Easement Rights Work" and "Easement Rights Research & Argument" are reimbursable to Travelers. Id. at 29-33. However, to the extent that such work encompasses reasonable efforts to disprove that the Louderbacks had a "deeded easement" or to prove that they did not possess an easement by necessity, such work is *not* reimbursable to Travelers.

As the Court has discussed, regardless of whether the Louderbacks' amended their complaint to state a defamation claim, regardless of whether the Cumis attorneys subjectively intended for their work to serve the purpose of defending against a potential defamation claim, and regardless of whether the various filings in the Underlying Action discussed a defamation claim, objectively reasonable defense fees and costs allocable to work done to prove that the Louderbacks in fact did not possess a "deeded easement" and did not possess an easement by necessity, are *not* reimbursable to Travelers. Such work is not reimbursable because is not allocable solely to non-covered claims; such work serves the purpose of defending against a potential defamation claim. Accordingly, Vinaccia's expert conclusions do not provide support for the amount of defense fees that are reimbursable to Travelers.

The Court finds that conducting a proper Buss allocation analysis would be both impractical and not reasonably possible on the current record. First, it is impractical for the Court to engage in the proper analysis required under Buss—to analyze each billing record and entry to determine whether such defense fee or cost is allocable solely to a non-covered claim (a claim unrelated to defamation) and reimbursable to Travelers. The record contains hundreds of pages of billing statements by Cumis counsel and thousands of individual billing entries; it would take an inordinate amount of time for the Court to review each billing entry to determine whether such expense is reimbursable. Second, and more importantly, on the current record, it is not reasonably possible for the Court to properly determine if a given expense is reimbursable because many of the billing entries do not provide sufficient information for the Court to determine whether such expense is allocable to a reasonable defense against a potential claim for defamation. For example,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

the billing entry by Cumis counsel Park Jensen dated February 28, 2018 states "Prepare correspondence to client regarding review of attorney Ogden's memo and prepare opposing points and authorities." Dkt. 290-2 at 92. The Court cannot ascertain whether such expense is allocable to defending against a potential claim for defamation because the Court has no context or information as to the contents of "attorney Ogden's memo" or whether the "correspondence" that Park Jensen prepared relates to, for example, disproving Louderbacks' alleged "deeded easement" or easement by necessity. Another billing entry by Cumis counsel Ogden, dated April 9, 2018, states: "Email to clients re same with draft email to Mark P." The Court likewise cannot determine whether such expense is allocable to reasonably defending against a potential claim for defamation. In short, the Court's conducting a proper Buss allocation analysis on the current record would entail speculation and guesswork.

Travelers argues that even if the Court were to find—as it has—that disproving the Louderbacks' claimed easement served the dual purpose of defending against a potential claim for defamation, fees and costs associated with the following categories of Cumis counsels' work are nonetheless reimbursable to Travelers:

> 1) demurrers; 2) motions to strike; 3) summary judgment and adjudication motions; 4) the fraudulent concealment claim, which is based on the failure to disclose an 1102 statement, including fees and costs relating to Mike Ryan, the real estate expert that testified about the 1102 statement; 5) subpoenas for bank records and the battles that ensued, as that went to show financial motive to conceal in the 1102 statement, as admitted by Ms. March; 6) work pursuing insurance coverage; 7) site inspections; 8) property appraisals – experts testifying about the value of the property with or without an easement, such as David Hamel (Louderbacks) and Mr. Arnold (Walking U); 9) real estate agents – such as Debra Nowlin, who was unable to show the property; 10) motion for judgment (aka directed verdict motion); 11) Judgment; 12) memorandum of costs; 13) post-trial briefing, including the post-trial briefs on easement by necessity; 14) statement of decision; and 15) trial attendance and trial prep for a trial in which defamation of person was not sought.

Travelers Brief at 34.

The Court is unpersuaded by Travelers’ argument. As an initial matter, the Court finds that many of the above work categories reasonably advanced the purpose of defending a potential defamation claim; thus, fees and costs allocable to such work categories are not reimbursable to Travelers. For example, Cumis counsels’ work in filing demurrers to and motions to strike the Louderbacks’ complaints reasonably serve the purpose of defending against potential claims for defamation predicated on allegations in the complaints that, by falsely representing that the Louderbacks have no easement, RMB disparaged John Louderback personally by accusing him of being a liar and having lied about possessing an easement over the Walking U Ranch property. Similarly, counsels’ work relating to “site inspections” and “trial attendance and trial prep for a trial” could reasonably be allocated to defending against a potential defamation claim arising out of the Louderbacks’ claimed easement. See Buss, 16 Cal. 4th at 47. To the extent that certain categories of work described above are not allocable to a potential claim for defamation, Travelers has failed to meet its burden of establishing which fees and costs are associated with such work; accordingly, the Court may not speculate as to the amounts reimbursable to Travelers for such work. For example, while fees and costs associated with “work pursuing insurance coverage” would not be allocable to a potential claim for defamation and would be reimbursable, Travelers fails to provide evidence as to which fees and costs are associated with “work pursuing insurance coverage.” See Travelers Brief at 39-40. Other categories of work that are asserted by Travelers to be reimbursable are not described with sufficient detail such that the Court can determine whether they are allocable solely to claims that are not even potentially covered under the Policy; for example, the category of work that Travelers calls “real estate agents – such as Debra Nowlin, who was unable to show the property.”

Travelers is correct that certain “attorney billing entries demonstrate that Travelers paid for … fees and costs that are not potentially covered under the [P]olicy.” Travelers Reply at 8. These include “fees incurred by Cumis counsel to research financial elder abuse.” Id. (citing Exhibit 221 at 7). However, other than certain billing entries of specifically cited by Travelers,[17] the Court cannot feasibly determine which fees and

[17] Travelers cites to a billing entry of Sue Park dated 4/11/2020 in the amount of $480.00 regarding: “Review and analyze CACI jury instruction 3100 regarding elder financial abuse and citing references to same and prepare same to K.”; Travelers also cites to an entry of Sue Park dated 4/12/2020 in the amount of $420.00 regarding: “Review and

costs are allocable to work not potentially covered under the Policy. To do so would require the Court to review all of the submitted billing records to determine if any given fee and cost is reimbursable to Travelers. Moreover, in many cases, such approach would require the Court to speculate as to whether a given billing entry is potentially allocable to a covered claim for defamation under the Policy.

As discussed, because Travelers seeks reimbursement for defense fees and costs, Travelers carries the burden of proof, by a preponderance of the evidence, of showing which fees and costs are allocated solely to claims that are not even potentially covered by the Policy. Buss, 16 Cal. 4th at 53. Carrying this burden, “if ever feasible,” is “extremely difficult.” Id. at 57-58. See also Peterson Tractor Co. v. Travelers Indem. Co., 156 Fed. Appx. 21, 23-24 (9th Cir. 2005) (holding that “[t]he district court erred when it placed the burden of proof on [the insured], and not [the insurer], to allocate … settlement [costs] … between covered and uncovered claims” and explaining that, although the insured “initially” bears the burden to show that “at least a portion of” the fees and costs sought are “attributable to claims that were covered by the insurance policy,” once this burden is met the “burden of proof shifts to the insurer to show what portion … is attributable to covered claims”); LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co., 156 Cal. App. 4th 1259, 1273 (2007) (“Buss and Evidence Code section 500 place [the burden of proof] squarely on insurers asserting claims for reimbursement” in part because “[i]nsurers that pay defense and indemnity costs are in the best position to

analyze financial elder abuse section of Reply brief and conduct legal and factual analysis and research to identify more “takings” cases to support fraud, “takings by fraud”, taking by concealment where there was a statutory duty to speak and related issues.” Travelers Reply at Exhibit 221 at 7. The Court finds that the fees associated with these two entries, totaling $900.00, are reimbursable to Travelers because they are specifically cited by Travelers in its briefing and are allocable solely to claims that are not even potentially covered under the Policy. The Court notes that these two entries totaling $900.00 reflect the fees charged at the correct rates determined by the section 2860 arbitrator ($300/hr for partners at Park Jensen), not at the rates that Travelers actually paid Park Jensen ($200/hr). See id.; Dkt. 283 at 11. Because it is undisputed that Travelers underpaid Cumis counsel at the correct rates and that RMB covered the difference, the Court must separately account for Travelers’ underpayment of Cumis counsel in the next section of this order.

monitor the underlying litigation, track expenses, and allocate policy benefits among insureds.”).

By providing the Court with thousands of individual billing entries of Cumis counsel, Travelers has not carried its burden of demonstrating which specific fees and costs are allocable solely to claims not even potentially covered under the Policy. See Hanover Ins. Co. v. Poway Acad. of Hair Design, Inc., No. 15CV536, 2016 WL 6698936, at *5 (S.D. Cal. Nov. 14, 2016) (“Plaintiff has not provided any evidence to show that the $45,573.89 it seeks from Defendant Poway and the $44,992.63 it seeks from Defendant BBI are allocated solely to the claims that are not even potentially covered. As such, Plaintiff has failed to meet its burden of proof for reimbursement.”); cf. DBRL Sys., Inc. v. Johnson, No. G033022, 2005 WL 78705, at *5 (Cal. Ct. App. Jan. 13, 2005) (“Buss makes clear that the burden of finding the work that may be ‘allocated solely’ to claims for which the insurer can seek reimbursement is on the insurer. … [The insurer] is that party which, in all fairness, should go through its own voluminous time and billing records to segregate work clearly not attributable to either [covered] claims or tort claims involving … issues [relating to covered claims] and exclude that work from its fee request.”). In cases involving attorneys’ fees, courts have repeatedly declined to sift through the record to determine the proper allocation of fees. See Gates v. Deukmejian, 987 F.2d 1392, 1399 (9th Cir. 1992) (“[I]n cases where a voluminous fee application is filed in exercising its billing judgment[,] the district court is not required to set forth an hour-by-hour analysis of the fee request.”); Monaghan v. Telecom Italia Sparkle of N. Am., Inc., No. CV 13-646, 2016 WL 11618226, at *2 (C.D. Cal. Aug. 1, 2016) (“The Court will not comb through the record to determine which portion of the fees should be assigned to which claim. The Ninth Circuit instructed the Court to consider each claim separately to determine whether there is a legal basis upon which to award fees. Plaintiff has provided no way for the Court to do that.”); Stampfli v. Susanville Sanitary Dist., No. 2:20-CV-01566, 2024 WL 5159627, at *1 (E.D. Cal. Dec. 18, 2024) (“It is not up to the court to scrutinize plaintiff's billing records line by line in an attempt to discern which items are relevant to the request for appellate fees.”); see also 12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd., No. 17-CV-02000, 2020 WL 1429904, at *8 (D.D.C. Mar. 23, 2020) (“The court will not parse through Plaintiffs’ billing records to ascertain which entries relate to which partially successful claims. . . . ‘[T]he judicial role is not to comb through endless lists of billing entries to gather data the parties have not seen fit to make clear.’” (quoting Am. Immigration Council v. U.S. Dep't of Homeland

Sec., 82 F. Supp. 3d 396, 414 (D.D.C. 2015)). Accordingly, in the absence of reliable evidence set forth by Travelers, the Court declines to undergo a line-by-line review to determine which specific fees and costs are allocable solely to claims not even potentially covered under the Policy.

Travelers has carried its burden, however, as to its entitlement to reimbursement for defense expenditures incurred *after* May 17, 2021, the date that the Louderbacks could no longer conceivably amend their complaint to add a defamation claim against RMB. Travelers further argues that it is entitled to reimbursement for fees billed for work *on* May 17, 2021. Travelers Obj. at 3-4. However, at least some of Cumis counsel's billable work on May 17, 2021, appears to have occurred before the trial court issued its final statement of decision in the Underlying Action. See Ex. 9 at 265 (reflecting billing statements related to a "proposed Statement of Decision" and a "further status conference"). Because the Louderbacks could have amended their complaint to state a claim for defamation up until the trial court issued its final statement of decision, it appears that Travelers is not entitled to reimbursement for fees incurred on May 17, 2021.

Travelers argues that it is entitled to reimbursement in the amount of $24,100 based on Park Jensen LLP's invoices for fees incurred on or after May 17, 2021. Travelers Obj. at 3-4; see also Ex. 9 at 264, 272, 277, 284, 289. However, Travelers has only submitted corresponding checks in the amount of $21,966.28. See Ex. 6 at 3-8, 11-12. Moreover, the $21,966.28 total includes payment for the 10.4 hours that Park Jensen LLP billed for its work on May 17, 2021, to which Travelers is not entitled to reimbursement. See Ex. 6 at 11-12; Ex. 9 at 265. Based on Travelers' undisputed panel rate of $200 per hour, Travelers appears to have paid Park Jensen LLP a total of $2,080 for Park Jensen LLP's 10.4 billable hours of work on May 17, 2021. While Travelers is not entitled to reimbursement of this $2,080 amount. it is entitled to reimbursement for the remainder of the fees paid for work *after* May 17, 2021. Travelers is therefore entitled to reimbursement in the amount of $19,886.28 for fees incurred by Cumis counsel after May 17, 2021.

Accordingly, other than (1) RMB's defense expenditures in the amount of $19,886.28, incurred after May 17, 2021, and (2) fees paid to Cumis counsel Park Jensen

totaling $900.00,[18] Travelers has failed to carry its burden of demonstrating for which defense fees and costs Travelers is entitled to reimbursement.

The Court notes that independent of the Buss allocation issue, Travelers has demonstrated that it paid a total of $158,804.56 to The Bankruptcy Law Firm, March and Bright’s law firm. RMB argues that of this total amount, $127,827 is attributable to costs, including expert witness fees and other costs incurred in the course of Cumis counsel’s defense of RMB. RMB Obj. at 5-6. In other words, RMB contends that only $30,932 of Travelers’ payment to BLF is attributable to attorneys’ fees. See id. at 13.

With respect to the portion of the total amount that is attributable to attorneys’ fees, RMB argues that Travelers may not recover the payment for attorneys’ fees because Travelers’ expert, Jacqueline Vinaccia, testified that Travelers did not seek to recover these funds. RMB Obj. at 12. RMB also argues that Travelers may not recover the attorneys’ fees because they pertain to BLF fees that were billed during the “gap period” between the point at which Travelers’ duty to defend arose and the point at which Cumis counsel was appointed. RMB Obj. at 12-15.

In response, Travelers argues that Vinaccia was not Travelers’ employee; it expressly reserved the right to seek reimbursement for all defense costs paid, including during the gap period; and the Court and Ninth Circuit already found that Travelers did not owe BLF attorneys’ fees. Travelers’ Resp. at 3.

In the instant matter, the Ninth Circuit held that “[t]he Insureds may not recover attorney's fees from Travelers for work that the former performed representing themselves in an underlying property dispute for which Travelers had a duty to defend the Insureds.” Travelers Indem. Co. of Connecticut v. Walking U Ranch, LLC, No. 22-55359, 2023 WL 3001461, at *1 (9th Cir. Apr. 19, 2023) (citation modified). The bar to RMB’s recovery of attorneys’ fees is not limited to the fees that RMB claimed with respect to BLF’s work on behalf of Cumis counsel. See id. (noting that such claims did

---

[18] See supra note 16. The Court notes that because Travelers underpaid Cumis counsel Park Jensen at a rate of $200/hr instead of the correct $300/hr rate as determined by the section 2860 arbitrator, Dkt. 283 at 11, Travelers paid only $600.00 of this $900.00 amount, and RMB paid the remainder (i.e., $300.00). Thus, the Court must separately account for Travelers’ underpayment of Cumis counsel in the next section of this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** ‘O’

| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
|---|---|---|---|
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

not permit RMB to "circumvent" the general bar on recovery for fees under Trope). Accordingly, regardless of Vinnacia's statement and Travelers' reservation of rights, Travelers is entitled to reimbursement for the amount it paid to BLF with respect to attorneys' fees.

With respect to payments made for BLF's costs, RMB argues that Travelers is not entitled to reimbursement. RMB argues that a portion of Vinaccia's report, which was not admitted into evidence, states that Travelers paid BLF for BLF's costs. RMB Obj. at 6. RMB also argues that Travelers' attorney's statements to the Court and March's testimony at trial are consistent with the fact that some portion of the amount Travelers paid to BLF was with respect to BLF's costs. Id. at 7-8. Finally, RMB also points to invoices from BLF to Travelers, which are in evidence, that reflect bills for BLF's costs. Id. at 9; see Ex. 10.

In response, Travelers argues that RMB's argument fails because it is largely based on evidence that is not part of the trial record. Id. at 2. Travelers further argues that even if the payments were for costs, BLF's costs for certain experts "were not incurred in defending against a non-pled cause of action for defamation of person and therefore, some or all would nonetheless be reimbursable." Id. at 3.

As an initial matter, Trope and its progeny do not appear to reach the question of whether an insured, self-representing attorney may recover costs incurred in connection with its self-representation. However, the Court observes that recovery of costs would not be inconsistent with the reasoning underlying Trope and subsequent cases. As the Ninth Circuit has explained, California courts have interpreted Trope to permit in-house counsel and a party's law firm to recover attorneys' fees, in large part because their fees were "incurred" within the meaning of California Civil Code § 1717. See Farmers Ins. Exch. v. L. Offs. of Conrado Joe Sayas, Jr., 250 F.3d 1234, 1238 (9th Cir. 2001) (citing PLCM Group, Inc. v. Drexler, 22 Cal. 4th 1084 (2000); Gilbert v. Master Washer & Stamping Co., Inc., 87 Cal. App. 4th 212 (2001)). In other words, "because the parties claiming fees had become liable to other parties for some amount of money as a result of the litigation," Trope did not bar recovery. See id. at 1237 ("[T]he key to the analysis of section 1717 under Trope is the *incurring* of fees."); see also Trope, 11 Cal. 4th at 292 (holding that a self-represented attorney may not recover "compensation for the *time and effort* he expends on his own behalf" (emphasis added)); Richards v. Sequoia Ins. Co., 195 Cal. App. 4th 431, 438 (2011) ("The measure of attorney's fees possibly owed . . .

were those 'expended' by the [plaintiffs], not those based upon the value of their *time or services*. . . . A plaintiff who *cannot show payment of legal expenses* in defense of a claim does not show contract damages . . . ." (emphasis added) (citation modified)). Here, there appears to be no dispute that RMB has "incurred" the $127,827 in costs to which it claims entitlement.

Finally, the Court observes that pursuant to the common fund theory, at least one California court has applied Trope's reasoning to prevent self-representing attorneys from recovering attorneys' fees while at the same time allowing self-representing attorneys to recover costs. In Leiper v. Gallagos, 69 Cal. App. 5th 284 (2021), a pro se attorney sought to recover attorneys' fees and costs under the common fund theory, which permits a party to recoup costs they incurred in prosecuting a claim from a "common fund" established by the litigation and from which others will benefit. See Leiper, 69 Cal. App. 5th at 291-92. As in Trope, the California Court of Appeal held that the attorney in Leiper could not recover fees for his self-representation. See id. at 293-95 (echoing Trope's reasoning with respect to the absence of "incurred" fees, the absence of an attorney-client relationship, and the disparities that granting attorneys' fees would create with respect to pro se attorneys and pro se nonlawyers). When it came to costs, however, the Leiper court held that "a prevailing pro se party should be entitled to seek . . . costs under the common fund doctrine." Id. at 297. The Court of Appeal reasoned that a "prevailing pro se party is entitled to seek costs excluding attorney fees under Code of Civil Procedure sections 1032 and 1033.5." Id. at 297. Accordingly, the Court of Appeal held that "eligibility to recover costs excluding attorney fees is not dependent on eligibility to recover attorney fees." Id.

The Court finds Leiper's reasoning persuasive. There is no obvious reason why a self-representing attorney may not recover costs incurred pursuant to his own defense. Such a finding would be consistent with Trope: it would comport with the requirement that an attorney "incur" expenses, and by the Leiper court's reasoning, it would create no disparity between self-representing attorneys and pro se nonattorneys with respect to the ability to recover costs. Moreover, the Court observes that in the context of costs, Trope's focus on the attorney-client relationship is minimally applicable. Cf. PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1092, 997 P.2d 511, 516 (2000), as modified (June 2, 2000) (reasoning that "by definition, the term 'attorney fees' implies the existence of an attorney-client relationship" (citing Trope, 11 Cal. 4th at 280)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** ‘O’

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

The trial record reflects that Travelers paid $134,002.66 to BLF for costs, not attorneys' fees, between February 22, 2018 and April 9, 2021.[19] Accordingly, Travelers is not entitled to reimbursement of that amount.

However, the Court finds that Travelers may recover the remaining $24,801.90 of the $158,804.56 that it paid to BLF for BLF's costs incurred after May 17, 2021 and its attorneys' fees, pursuant to the Court's March 10, 2022 order. See Dkt. 173 at 22

[19] The Court calculated this amount using evidence set forth in Exhibit 282, including checks to BLF and other law firms and accompanying letters from Travelers' counsel. See Ex. 282. For some checks, the accompanying letters expressly state that the payment to BLF was for BLF's costs. For other checks, a corresponding invoice is available in the record, reflecting that the payment or a portion thereof was attributable to costs, not attorneys' fees. See Exs. 9, 10. The Court only includes the portions attributable to costs in its calculations. Finally, in instances where the accompanying letter did not specify the basis of payment to BLF and there was no available invoice, the Court concludes that the payment was attributable to reimbursement for BLF's costs—and not attorneys' fees—based on Travelers' statement that it was declining to pay for legal services performed by BLF, set forth in each of the relevant checks' accompanying letters. See id.

Exhibit 282 included one additional check to BLF for costs in the amount of $26.68. See Dkt. 282 at 220. The accompanying letter suggests that these costs were incurred between June 1, 2021 and July 15, 2021. See id. at 217; see also Ex. 9 at 276. Because these costs appear to have been incurred after May 17, 2021, RMB is not entitled to this amount, and it is not included in the $134,002.66 total.

Finally, RMB suggests that the checks issued by Travelers to BLF on February 22, 2018, and March 27, 2018, are for fees, not costs. See RMB Obj. at 27. However, when cross-referenced with BLF invoices submitted in Exhibit 10, it appears that $4,505.52 of the total amount paid to BLF in the February 22, 2018 check is attributable to BLF's costs. See Ex. 10 at 11. Moreover, Travelers marked up the invoice corresponding to the check issued to BLF on March 27, 2018. See Ex. 282 at 25. This mark-up reflects that Travelers paid $1,652.70 in costs as part of the total amount paid to BLF in the March 27, 2018 check. See id. Accordingly, the total amount paid by Travelers to BLF for costs on or before May 17, 2021 is $134,002.66.

(finding "that March and Bright are not entitled to attorneys' fees for the work they performed through BLF"); Trope v. Katz, 11 Cal. 4th 274, 280 (1995).

In summary, Travelers has established that it is entitled to reimbursement for (1) RMB's defense expenditures in the amount of $19,886.28, incurred after May 17, 2021, (2) fees paid to Cumis counsel Park Jensen totaling $900.00, and (3) attorneys' fees and post-May 17, 2021 costs paid to BLF in the amount of $24,801.90. Travelers has not met its burden of demonstrating that it is entitled to reimbursement for the remainder of the $547,591.92 that it seeks from RMB.

## VII. RMB'S ENTITLEMENT TO FEES PAID TO CUMIS COUNSEL AND SUE PARK

### A. RMB's Entitlement to Fees Paid to Cumis Counsel Due to Travelers' Underpayment of Counsel

The parties do not appear to dispute that Travelers underpaid RMB's Cumis counsel at the correct hourly rates decided by the section 2860 arbitrator, resulting in a shortfall that RMB paid to Cumis counsel. RMB Brief at 38-39; Travelers Reply at 17. RMB seeks judgment against Travelers for the $186,498.18 shortfall[20] in Cumis counsel fees that RMB paid, plus 10% simple interest. RMB Brief at 38-39; RMB Obj. at 16-17.

The amount that RMB is entitled to reimbursement by Travelers to cover the shortfall in fees that Travelers paid to Cumis counsel depends on the extent to which RMB's payments went towards fees and costs that are allocable to a reasonable defense of allegations in the Underlying Action that could support a potential claim for defamation. To the extent that some or all of the $186,498.18 shortfall in Cumis fees that RMB paid are allocable to a defense of such allegations, RMB is entitled to recovering such amounts from Travelers (alternatively, such amount may be offset against the amount that RMB owes Travelers, in the event that Travelers is entitled to reimbursement from RMB in an amount that exceeds what RMB owes Travelers).

[20] As discussed, RMB has failed to provide evidence that it paid $205,000 to Cumis counsel. The evidence submitted by RMB indicates that RMB paid $186,498.18 to Cumis counsel.

On the current record, Travelers is not required to reimburse RMB for the shortfall in Cumis counsel fees paid by RMB for work performed after May 17, 2021. See Travelers Obj. at 4. RMB's checks paid to Park Jensen on June 1, 2021, July 16, 2021, August 7, 2021, January 5, 2022, and March 1, 2022 correspond to the shortfall in Park Jensen's fees for work performed on or after May 17, 2021. See Dkt. 316 at 39-43; Ex. 9 at 264, 272, 277, 284, 289. RMB also submitted checks paid to Park Jensen on March 25, 2022, and April 6, 2022. See Dkt. 316 at 44-45. In total, these checks are in the amount of $15,800.00. See id. Of this amount, Travelers is only required to reimburse RMB for the shortfall in fees paid for Park Jensen's work on—but not after—May 17, 2021, as discussed above. In other words, Travelers is required to reimburse RMB for the shortfall in fees for Park Jensen's 10.4 hours of billed work on May 17, 2021, but not the remaining amount for billed work after May 17, 2021. See Ex. 9 at 265. There is no dispute that RMB paid Park Jensen $100.00 per hour to cover the shortfall in Park Jensen's fees. See Tr. 12/2/2025 157:8-21. Accordingly, Travelers may be required to reimburse RMB for $1,040.00 for the shortfall in Park Jensen's fees for its 10.4 hours of billed work on May 17, 2021, as discussed below. However, Travelers is not required to reimburse RMB for the remaining $14,760.00 that RMB paid Park Jensen for work performed *after* May 17, 2021.

This leaves $171,738.18 of the $186,498.18 that RMB paid to cover the shortfall in fees that Travelers paid to Cumis counsel. In other words, $171,738.18 of RMB's payments to Cumis counsel is attributable to Cumis counsel's work on or before May 17, 2021. Travelers has not met its burden of demonstrating whether some or all of the remaining $171,738.18 paid by RMB is not allocable to a potential claim for defamation and is therefore not reimbursable to RMB. See Buss, 16 Cal. 4th at 53. Accordingly, RMB is entitled to be reimbursed $171,738.18 from Travelers, the amount that RMB paid Cumis counsel to cover the shortfall owed to counsel which resulted from Travelers underpaying counsel at the appropriate hourly rates determined by the section 2860 arbitrator. See Dkt. 283 at 11.

### B. RMB's Entitlement to Fees Paid to Sue Park in 2018

RMB seeks from Travelers $19,395, the amount that March and Bright's law firm, BLF, allegedly paid Sue Park in 2018 for legal work that she performed as an "independent contractor" on behalf of BLF. RMB Brief at 39-40. RMB argues that the

work that Sue Park performed on behalf of BLF included "draft[ing] pleadings for Cumis attorney Ogden[] when [BLF] was co-counsel to Ogden." Id. at 40.

Travelers denies its obligation to pay for Sue Park's fees, contending that "[t]he Ninth Circuit [has] affirmed that Travelers had no obligation to pay for these defense fees and costs [incurred by BLF in hiring Sue Park as an independent contractor before Park was appointed as Cumis counsel], which were submitted as part of BLF's billing statements and distinct from Cumis counsel." Travelers Brief at 22.

As an initial matter, the Court finds that RMB is not foreclosed from recovering from Travelers some or all of the $19,395 that BLF allegedly paid to Sue Park.[21] In the Court's March 10, 2022 order, "the Court f[ound] that March and Bright are not entitled to attorneys' fees for the work *they performed* through BLF; and that Travelers has paid all necessary attorneys' fees by paying each successive Cumis counsel." Dkt. 173 at 22 (emphasis added). On April 19, 2023, the Ninth Circuit affirmed the Court's finding on this issue, stating that "[t]he Insureds may not recover attorney's fees from Travelers for work that *the former performed* representing themselves in an underlying property dispute (the "underlying action") for which Travelers had a duty to defend the Insureds." Dkt. 196 at 2 (emphasis added). However, neither the Court's March 10, 2022 order nor the Ninth Circuit's April 19, 2023 memorandum decision decided the issue of whether RMB is entitled to recover attorneys' fees that BLF paid to Sue Park for legal work that she completed in defending RMB in the Underlying Action.[22]

[21] As discussed in greater detail below, RMB has not provided sufficient evidence that BLF in fact paid Sue Park $19,395 before Park Jensen was appointed as Cumis counsel.

[22] Travelers argues that RMB is foreclosed from recovering fees paid to Sue Park as an independent contractor because such fees are only "recoverable as part of a breach of contract cause of action." Travelers Obj. at 4-5. Travelers also suggests that RMB is foreclosed from raising this argument because RMB failed to raise the argument on appeal to the Ninth Circuit. Id. The Court is not persuaded. Travelers' cited authority, In re Facebook, Inc., 821 F. Supp. 3d 1130 (N.D. Cal. 2026), involved district court findings on a granted motion to dismiss that were either (a) not appealed to the Ninth Circuit, id. at 1151, or (b) expressly affirmed by the Ninth Circuit, id. at 1144-45. Plaintiffs later sought to reassert the same arguments in an amended complaint. Id. at 1144, 1151.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL** **'O'**

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-02482-CAS-GJSx | Date | October 9, 2026 |
| Title | The Travelers Indemnity Company of Connecticut et al v. Walking U Ranch, LLC et al | | |

In Trope v. Katz, 11 Cal. 4th 274 (1995), the California Supreme Court held that "an attorney who chooses to litigate in propria persona rather than retain an attorney to represent him in an action to enforce a contract containing an attorney fee provision can[not] recover attorney fees under Civil Code section 1717." PLCM Grp. v. Drexler, 22 Cal. 4th 1084, 1092 (2000). The Trope court reasoned that, "by definition, the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer." Id. at 1092 (citing Trope, 11 Cal. 4th at 280). Consistent with this holding, the California Supreme Court has subsequently held that "an entity that is represented by in-house counsel may recover attorney fees under Civil Code section 1717" because, "[l]ike private counsel, in-house counsel stand in an attorney-client relationship with the corporation and provide comparable legal services." Id. at 1088. "A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf." Id. at 1093.

Here, the work that Sue Park performed for BLF is analogous to the work that the in-house counsel performed for the corporation in Drexler, 22 Cal. 4th at 1084. Sue Park was hired as a contract attorney by BLF to provide legal services on its behalf to defend RMB in the Underlying Action. Moreover, because both BLF and Walking U Ranch are entities wholly owned by March and Bright, Dkt. 173 at 5, 7, the interests of BLF, Walking U Ranch, March, and Bright are joint and indivisible, such that Sue Park was effectively hired by RMB to defend RMB in the Underlying Action. In other words, "unlike pro se litigants, [Sue Park] d[id] not represent [her] own personal interests and [is] not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer." Drexler, 22 Cal. 4th at 1093. Even though Park performed such work before she was appointed as Cumis counsel, RMB is not precluded under the Trope line

---

In contrast, here, RMB presents this theory to the Court for the first time. Notwithstanding Travelers' observation that the amounts at issue were "part of the set of bills-at-issue" in RMB's breach of contract claim, Travelers has presented no evidence that either this Court or the Ninth Circuit expressly considered the instant theory, let alone dismissed it with prejudice, as the district court ordered in In re Facebook. See 821 F. Supp. 3d at 1145, 1151. Accordingly, the Court declines to credit this line of reasoning.

of cases from seeking reimbursement from Travelers for the attorney fees that it paid to Sue Park, and Travelers does not cite to caselaw indicating otherwise. Consistent with its findings above, the Court finds that such fees paid to Sue Park would be reimbursable to RMB only to the extent that they are reasonable and are allocable to defending against a potential claim for defamation. To the extent that some or all of such fees are not allocable to a potential claim for defamation, RMB would not be entitled to reimbursement for such fees. See Buss, 16 Cal. 4th at 50 (“Under the policy, the insurer does not have a duty to defend the insured as to the claims that are not even potentially covered.”).

However, on the current record, RMB has not provided sufficient evidence that BLF in fact paid Sue Park $19,395 for legal work she undertook on behalf of RMB in the Underlying Action in 2018 and before Park Jensen was appointed as Cumis counsel. RMB argues that it presented sufficient evidence in the form of (1) March’s statements to the Court stating that BLF paid Sue Park as an independent contractor at a rate of $90.00 per hour, for a total of around $19,300.00, see Tr. 12/4/25 at 206-10, 245:1-2; (2) trial exhibits reflecting Sue Park’s fees for her 2018 independent contractor work, which do not show a past balance owed, see Ex. 9 at 1-34; (3) statements by Travelers’ expert, Jacqueline Vinaccia, acknowledging that BLF paid Sue Park at a rate of $90.00 per hour for her work, see Tr. 12/4/25 at 205:8-20, 206-208; and (4) BLF’s invoices to Travelers, which list BLF’s payments to Sue Park as costs, see Ex. 10. See RMB Obj. at 19-20. However, Sue Park did not testify as to the amount BLF paid her for her work as an independent contractor, see Tr. 12/3/2025 at 151-55, nor did RMB submit checks that demonstrate these payments were made. The checks that RMB paid to Cumis counsel, which are in evidence, Dkt. 316 (Exhibit 340), total $186,498.18; there are no checks payable to Sue Park or Park Jensen beyond those that have been already accounted for in the $186,498.18 figure. See Exhibit 340; supra note 4.

Moreover, Travelers argues that it paid at least some of Sue Park’s independent contractor fees. Travelers Resp. at 7. Travelers points to a February 22, 2018 check paid by Travelers to BLF and an accompanying letter from Travelers’ counsel. Id.; see Ex. 282 at 1-4. The letter states that the check is payment for BLF’s February 19, 2018 invoiced expenses, including “27.3 hours of research by outside attorney Sue Park.” See Travelers Resp. at 7; Ex. 282 at 1-4; see also Ex. 10 at 11 (reflecting an invoice for 27.3 hours of research by Sue Park). Moreover, as discussed above, RMB is not obligated to

reimburse Travelers for the payments that Travelers made for BLF's costs as reflected in the trial record. Accordingly, on the current record, the Court finds that RMB is not entitled to reimbursement from Travelers in the amount of $19,395.

## VIII. PREJUDGMENT INTEREST

RMB argues that it is entitled to prejudgment interest on the shortfall in fees that Travelers paid to Cumis counsel, pursuant to California Civil Code §§ 3287(a) and 3289(b). RMB Brief at 38-39; RMB Obj. 17. RMB argues that it is entitled to 10% interest on each shortfall check, calculated from the date that each check was paid. RMB Brief at 38; RMB Obj. at 17-18.

In response, Travelers argues that RMB is not entitled to prejudgment interest. Travelers Resp. at 5-6. Travelers argues that the section 2860 arbitrator did not direct Travelers to "make any payment or determine how much was owed." Id. Travelers further argues that the amount Travelers owes to RMB in reimbursement "will not be known or calculable until this Court issues its final ruling," and that "any amounts found to be reimbursable to Travelers immediately alters the amount of the alleged 'shortfall.'" Id. at 6. Finally, Travelers argues that § 3289(b) does not apply to this action because RMB has no breach of contract claim before the Court. Id.

"[An insured] is entitled to prejudgment interest on the expenses it incurred in defending [an] action that [the insurer] was obligated to defend." CoPart, Inc. v. Travelers Indemn. Co. of Illinois, 1999 WL 977948, at *3 (N.D. Cal. Oct. 22, 1999), aff'd sub nom. Copart, Inc. v. Travelers Ins. Co., 11 F. App'x 815 (9th Cir. 2001); see also Tradewind Prods., Inc v. Hartford Fire Ins. Co., No. CV065201, 2009 WL 10710831, at *4 (C.D. Cal. Mar. 30, 2009) (awarding prejudgment interest to plaintiff in a duty-to-defend case). Section 3287(a) provides that "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day." Cal. Civ. Code § 3287(a). Under this provision, damages are considered certain or capable of being made certain "where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." Safeway Stores, Inc. v. National Union, 64 F.3d 1282, 1291 (9th Cir. 1995). Courts examine "whether the defendant actually knows the amount owed or from

reasonably available information could have computed that amount." Westport Ins. Corp. v. California Cas. Mgmt. Co., 916 F.3d 769, 782 (9th Cir. 2019) (quoting Children's Hosp. & Med. Ctr. v. Bonta, 97 Cal. App. 4th 740 (2002)) (citation modified).

RMB and Travelers do not appear to dispute the amount of the hourly rates determined by the section 2860 arbitrator. See RMB Brief at 38-39; Travelers Reply at 17. Accordingly, "[h]ad [Travelers] known how the Court would rule on that issue, it *could have* calculated its damages, so the damages were 'capable of being made certain by calculation,' and prejudgment interest is available." Mesa Underwriters Specialty Ins. Co. v. Allergan, Inc., 604 F. Supp. 3d 935, 942-43 (C.D. Cal. 2022) (granting prejudgment interest where "there was no 'factual uncertainty' regarding the amount of damages [d]efendant may owe" if the court ordered reimbursement); see also Pac. Select Fund v. Bank of New York Mellon, No. SACV10198, 2012 WL 12888426, at *2 (C.D. Cal. Apr. 19, 2012) (awarding prejudgment interest where "the determination of [plaintiff]'s damages was merely a matter of calculation once the Court resolved the legal question regarding the scope of [defendant]'s payment obligations"); see also CoPart, Inc., 1999 WL 977948, at *3 (noting that "damages are capable of being made certain by calculation if they may be determined by reasonably ascertainable market values").

To the extent that the amount owed to Travelers in equitable reimbursement remained uncertain up until the date of this Order, such uncertainty is immaterial. "It is sufficient that the claim of the party seeking interest be certain: "[E]ven though the existence of an unliquidated counterclaim or set-off necessarily puts the amount payable in doubt, it is well settled that it does not render the claim itself uncertain or deprive the claimant of the right to prejudgment interest." U.S. ex rel. Bartec Indus., Inc. v. United Pac. Co., 15 F.3d 855, 856 (9th Cir. 1994) (quoting Fluor Corp. v. United States, 405 F.2d 823, 830 (9th Cir. 1969)). Notwithstanding any pending determination of equitable reimbursement owed to Travelers, the amount of damages owed to RMB is "certain, or capable of being made certain." Accordingly, RMB is entitled to prejudgment interest on the amount that RMB paid Cumis counsel to cover the shortfall owed to counsel, as well as any other certain or reasonably ascertainable defense-related expenditures for which it is entitled payment from Travelers.

In any event, the Court finds that the amount owed to Travelers in equitable reimbursement is certain or capable of being made certain. While the total amount of reimbursement to which Travelers was entitled has been the subject of legal dispute

between the parties up to the date of this decision, the parties do not dispute the factual basis of Travelers’ damages. See Highlands Ins. Co. v. Cont'l Cas. Co., 64 F.3d 514, 521 (9th Cir. 1995) (“While a factual dispute respecting damages will preclude a grant of prejudgment interest under § 3287(a), a legal dispute will not.”); see also Evanston Ins. Co. v. OEA, Inc., 566 F.3d 915, 920 (9th Cir. 2009) (affirming the district court’s award of prejudgment interest pursuant to § 3287(a) to an insurer entitled to reimbursement of defense costs). As one California Court of Appeal put it:

> The award of damages was based on past defense costs, whose amount was undisputed. Although it was not clear going into this action exactly how these defense costs would be allocated, the only dispute was of a legal, not factual nature. If [each party] had known how the court would ultimately rule, it could have calculated its liability as the only issue was what portion it should pay of the defense costs, and not the amount of those costs.

Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Mid-Century Ins. Co., No. A156889, 2021 WL 4785785, at *8 (Cal. Ct. App. Oct. 14, 2021). The Court finds this reasoning instructive here. Accordingly, Travelers is entitled to prejudgment interest on the defense costs to which it is entitled in reimbursement.

Having established that the parties are entitled to prejudgment interest, the Court must address three remaining inquiries: (1) the date on which prejudgment interest accrued, (2) the rate of prejudgment interest applicable to this action, and (3) the effect of any set-off of the parties’ respective judgments on their entitlement to prejudgment interest.

First, the Court addresses the date on which prejudgment interest accrued. California courts have “uniformly” held that prejudgment interest vests “at the time that the amount of damages become certain or capable of being made certain, not the time liability to pay those amounts is determined.” Evanston Ins. Co., 566 F.3d at 921.

As to RMB’s entitlement to prejudgment interest, the correct hourly rates were determined by section 2860 arbitration on July 30, 2025. RMB Trial Ex. 330. Accordingly, damages to RMB were “certain or capable of being made certain” on July 30, 2025, at the very latest. Prior to that date, the parties disputed whether section 2860 entitled Travelers to “pay Cumis counsel only its panel rates.” Id. at 3. If Travelers panel

rates were ultimately found to be improper under section 2860, “the appropriate rate would [have been] those actually charged by Cumis counsel.” Id.

“The presence of a dispute between the parties as to the way in which to calculate damages does not bar recovery under California Civil Code § 3287.” Baker v. Garden Grove Med. Invs., Ltd., 306 F. App'x 393, 396 (9th Cir. 2009). “Where alternative damages theories ‘require only the court's legal determination of which is appropriate,’ and ‘the amount of damages under either theory is readily ascertainable by mathematical calculation’ . . . prejudgment interest is appropriate.” Pac. Select Fund v. Bank of New York Mellon, No. SACV10198, 2012 WL 12888426, at *2 (C.D. Cal. Apr. 19, 2012) (citation modified) (quoting Shell Oil Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 44 Cal. App. 4th 1633, 1651 (Cal. Ct. App. 1996)); but see Wisper Corp. v. California Com. Bank, 49 Cal. App. 4th 948, 960 (1996) (“[W]here the amount of damages cannot be resolved except by verdict or judgment, prejudgment interest is not appropriate.”).

Here, Travelers and RMB appear to have disputed which of two alternative damages theories was appropriate under section 2860—(1) Travelers’ panel rates or (2) the fees actually charged by Cumis counsel. Courts in California have awarded prejudgment interest under similar circumstances. See, e.g., Olson v. Cory, 35 Cal. 3d 390, 402 (1983) (awarding prejudgment interest where the amount due was “either of two readily calculable amounts” pending the resolution of questions of law); Hartford Accident & Indem. Co. v. Sequoia Ins. Co., 211 Cal. App. 3d 1285, 1307 (1989) (awarding prejudgment interest where the trial court had “only two options” regarding the calculation of damages, and where “the amount of damages under either formula was readily ascertainable by mathematical calculation”); Shell Oil Co. v. Nat'l Union Fire Ins. Co., 44 Cal. App. 4th 1633, 1651 (1996) (awarding prejudgment interest where the plaintiff’s three “alternative theories required only the court's legal determination of which was appropriate; the amount of damages would thereby be fixed”). Accordingly, the prior dispute between Travelers and RMB as to the proper method of calculating Cumis counsel costs does not bar RMB’s entitlement to prejudgment interest accrued before July 30, 2025.

In duty to defend cases, California courts have established that prejudgment interest accrues on the dates on which the insured received invoices for expenses incurred. See Tradewind Prods., Inc v. Hartford Fire Ins. Co., No. CV065201, 2009 WL 10710831, at *4 (C.D. Cal. Mar. 30, 2009) (noting that damages were certain or capable

of being made certain because they could be calculated using the "reasonably ascertainable market value[]" of legal services); see also CoPart, Inc., 1999 WL 977948, at *3 (finding that interest began to accrue on the date on which the insured "incurred its obligations," i.e., "the billing dates"); Pulte Home Co., LLC v. HDI Glob. Specialty SE, No. CV 24-2191, 2026 WL 2354081, at *2 (C.D. Cal. Aug. 13, 2026) (awarding prejudgment interest from the date on which the insured received invoices from its attorneys). Accordingly, the Court concludes that RMB is entitled to prejudgment interest from the dates it received invoices from Cumis counsel until Travelers tendered payment.

By the same logic, Travelers is entitled to prejudgment interest from the dates on which Travelers made its reimbursable payments to RMB. See Evanston, 566 F.3d at 920-21 (affirming the district court's award of prejudgment interest to an insurer who was entitled to reimbursement "from the time the payments were made" to the insured).

As to the second remaining inquiry, the Court must determine the rate of prejudgment interest. RMB argues that 10% prejudgment interest is appropriate under Cal. Civ. Code § 3289(b). RMB Obj. at 17. In response, Travelers argues that § 3289(b) does not apply where there is no breach of contract claim at issue. Travelers Resp. at 6.

Cal. Civ. Code § 3289(b) states, "If a contract entered into after January 1, 1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a rate of 10 percent per annum after a breach." Cal. Civ. Code § 3289(b). Contrary to Travelers' suggestion, courts do not solely award prejudgment interest under § 3289(b) with respect to breach of contract claims. See, e.g., Westport Ins. Corp. v. California Cas. Mgmt. Co., 916 F.3d 769, 781 (9th Cir. 2019) (affirming prejudgment interest awarded under § 3289(b) in an equitable subrogation action, "which sounds in contract"); Burlington Ins. Co. v. Devdhara, No. C 09-00421, 2011 WL 13286006, at *6 (N.D. Cal. Feb. 28, 2011) (awarding prejudgment interest under § 3289(b) in a suit enforcing quasi-contractual obligations); but see Mesa Underwriters Specialty Ins. Co. v. Allergan, Inc., 604 F. Supp. 3d 935, 943 (C.D. Cal. 2022) (declining to award 10% interest because "the mere fact the parties are connected by an insurance contract does not convert Plaintiff's claim to a breach of contract claim . . . reimbursement is founded on *equitable* principles of unjust enrichment – not contract"); Hewlett Packard Co. v. ACE Prop. & Cas. Ins. Co., No. C 99-20207, 2010 WL 11469575, at *5 (N.D. Cal. Dec. 15, 2010) (applying California's default rate of 7% to a claim for an insurer's reimbursement).

The instant action arises out of Travelers' contractual duty to defend RMB. The Court finds that this underlying contractual obligation sufficiently warrants application of a 10% prejudgment interest rate, pursuant to § 3289. Cf. Thane Int'l, Inc. v. Hartford Fire Ins. Co., No. EDCV061244, 2009 WL 453106, at *7 (C.D. Cal. Feb. 19, 2009) (awarding insured party 10% prejudgment interest on attorneys' fees as a result of the insurer's breach of their duty to defend).

As to the final remaining inquiry, the Court considers the effect of any set-off on the calculation of prejudgment interest. As the Ninth Circuit has explained:

> If the unliquidated set-off or counterclaim is based upon a breach unrelated to the sum due under the primary claim, interest is allowed on the entire claim. The amount of the counterclaim or set-off as determined at trial is then deducted from this total. If . . . the unliquidated set-off or counterclaim constitutes a partial payment of the primary claim, interest is allowable on the balance due after deducting the amount of the set-off or counterclaim as determined at trial.

Fluor Corp. v. United States, 405 F.2d 823, 830 (9th Cir. 1969) (applying California and Arizona law).

Where, as here, both parties are entitled to damages arising from "the same contract provision," use of the set-off procedure is appropriate. Cf. Westinghouse Elec. Corp. v. CX Processing Labs., Inc., 523 F.2d 668, 680 (9th Cir. 1975) (applying a set-off procedure under analogous Washington law where plaintiff brought suit to recover an unpaid amount under a contract, and defendant counterclaimed for damages resulting from breach under the same contract). Accordingly, interest will be awarded solely on the difference between the two judgments. See id. at 679-80; Great W. Drywall, Inc. v. Roel Constr. Co., Inc., 166 Cal. App. 4th 761, 768 (2008) ("'[T]he court may properly allow interest only on the balance found to be due after deduction of such offsets . . .' because 'to that extent only has the plaintiff been damaged.'" (quoting Hansen v. Covell, 218 Cal. 622, 630-31 (1933))).

Each of these conclusions of law may be deemed to be a finding of fact.

## IX. CONCLUSION

In accordance with the foregoing, the Court **DENIES IN PART** Travelers' equitable reimbursement claim against RMB, with prejudice.

The Court **GRANTS IN PART** Travelers' equitable reimbursement claim against RMB with respect to the following: Travelers has met its burden of demonstrating that it is entitled to reimbursement from RMB for $900.00 paid to Cumis counsel Park Jensen; Travelers has met its burden of demonstrating that it is entitled to reimbursement from RMB for the $24,801.90 that Travelers paid to The Bankruptcy Law Firm in attorneys' fees and post-May 17, 2021 costs; Travelers has met its burden of demonstrating that it is entitled to reimbursement from RMB for the $19,886.28 that Travelers paid to Cumis counsel for work performed after May 17, 2021.

RMB is entitled to reimbursement from Travelers in the amount of $171,738.18, the amount that RMB paid Cumis counsel to cover the shortfall owed to counsel for work performed on or before May 17, 2021, which resulted from Travelers underpaying counsel at the appropriate hourly rates determined by the section 2860 arbitrator.

As the party entitled to reimbursement after set-off of these awards, RMB is entitled to prejudgment interest at a rate of 10%, accruing from the dates RMB received invoices from Cumis counsel to the date of this ruling. The parties' judgments shall be set off from one another prior to the calculation of prejudgment interest.

Other than provided herein, RMB have no further obligation to reimburse Travelers. Other than provided herein, Travelers has no further obligation to reimburse RMB.

IT IS SO ORDERED.

| | |
|---|---|
| | 00 : 00 |
| Initials of Preparer | CMJ |